UNITED STATES of America, Appellee,

v.

John DOE, a/k/a Rafael Segundo Crespo–Herrera, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Peter DOE, a/k/a Ricardo Mejia–Hernandez, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Ricardo ROE, a/k/a Juan Andrades–Salinas, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Willy DOE, a/k/a Ruben Oviedo, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Peter DOE, a/k/a Francisco Antonio Pacheco–Lacayo, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Richard DOE, a/k/a Luciano Amaya–Ruiz, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Rafael GARAY, Defendant, Appellant.

Nos. 87–1424 to 87–1430.

United States Court of Appeals, First Circuit.

Heard July 29, 1988.

Decided Oct. 27, 1988.

Roberto J. Sicilia, Santurce, P.R. by Appointment of the Court, for defendant, appellant Juan Andrades–Salinas.

Ayxa Rey Diaz, San Juan, P.R. by Appointment of the Court, for defendant, appellant Rafael Segundo Crespo–Herrera.

Jeffrey M. Williams, San Juan, P.R., by Appointment of the Court, for defendant, appellant Ruben Oviedo.

Gabriel Hernandez–Rivera, Old San Juan, P.R. by Appointment of the Court, for defendant, appellant Ricardo Mejia–Hernandez.

Juan Casanova, on brief, for defendant, appellant Luciano Amaya Ruiz.

Julio Gil De La Madrid, on brief, for defendant, appellant Rafael Garay.

Frank Pola, Santurce, P.R. by Appointment of the Court, on brief, for defendant, appellant Francisco Antonio Pacheco–Lacayo.

Jose R. Gaztambide, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before CAMPBELL, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

The seven appellants were members of an eight man crew arrested on board the Honduran registered *Captain Robert* in international waters off the coast of Venezuela. They were seized by the Coast

Guard after a crew from the *USS King* boarded the vessel to conduct an inspection for safety violations and then discovered bales of marijuana in nearly every compartment of the boat. One member of the boarding party estimated there were approximately 250 bales on the vessel with a total weight of ten tons. While the vessel was being towed to San Juan, Puerto Rico, it began to take on water, was declared a navigational hazard, and was sunk with machine gun fire by the government. Five bales of marijuana were saved for use as evidence at the suspects' trial.

A jury convicted all the defendants of aiding and abetting each other on board a vessel, within the customs waters of the United States, to possess with intent to distribute marijuana in violation of 21 U.S.C. § 955a(c). Appellant Rafael Garay also was convicted of committing essentially the same act as a citizen of the United States on board a vessel, a violation of 21 U.S.C. § 955a(b). All defendants were acquitted on a charge of importation.

We affirm the convictions.

## I

Appellants first question whether the government proved, with *properly* admitted evidence, all elements of the crime of which they were convicted. Each appellant was charged with violating 21 U.S.C. § 955a(c) (now incorporated into 46 U.S.C. App. § 1903), which as then worded made it unlawful

> for any person on board any vessel within the customs waters of the United States to knowingly ... possess with intent to ... distribute[ ] a controlled substance.

A foreign vessel is constructively within the "customs waters" of the United States if there is some type of arrangement between the United States and the foreign government permitting authorities from our nation to board such a vessel upon the high seas. 19 U.S.C. § 1401(j); *United States v. Molinares Charris*, 822 F.2d 1213, 1216–17 (1st Cir.1987). The "arrangement" can be ad hoc permission from the foreign sovereign. *United States v. Robinson*, 843 F.2d 1, 2 (1st Cir.1988); *United States v. Bent–Santana*, 774 F.2d 1545, 1549–50 (11th Cir.1985); *see also United States v. Green*, 671 F.2d 46, 51–52 (1st Cir.) (interpreting "special arrangement" for boarding of vessels by United States officials as expressed in 19 U.S.C. § 1581(h), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2962, 73 L.Ed.2d 1352 (1982). *But see United States v. Santa Lara*, 783 F.2d 989 (11th Cir.1986) (Hatchett, J., concurring, questioning the holding of *Bent–Santana*). To convict the defendants, therefore, the government had to show beyond a reasonable doubt not only that the defendants possessed the marijuana with intent to distribute, but also that the Honduran government approved of the boarding of the vessel by the Coast Guard. It is this "jurisdictional" element of the crime which appellants claim was not properly proven beyond a reasonable doubt at trial.[1]

The government used primarily three pieces of evidence to show that it had received proper authorization for the boarding. First, Officer Gibbons, the officer in charge of the detachment on board the *USS King*, testified without objection that he received oral permission via government and diplomatic channels from the Honduran government before boarding the suspected boat. Secondly, the court admitted two telexes sent from the Coast Guard station in Miami, Florida, indicating that the Miami station had received telephonic permission from Honduras to board. Third, the government submitted a certificate dated February 3, 1987, from the Commander–In–Chief of the Honduran Naval Force, verifying that the Honduran government had granted permission to the United

---

**1.** We note that none of the defendants renewed their motions for judgment of acquittal at the end of all the evidence, Fed.R.Crim.P. 29, so the convictions may be overturned only for "clear and gross injustice." *United States v. Cheung*, 836 F.2d 729, 730 n. 1 (1st Cir.1988) (per curiam); *United States v. Greenleaf*, 692 F.2d 182, 185 (1st Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983). We see none here. We do not even need to apply this standard, however, because the outcome is the same even under the ordinary, less rigorous standard.

States to board the *Captain Robert*. This latter document, however, stated that permission had been granted on November 17, 1986, whereas the Coast Guard boarded the ship on November 16.

Appellants argue that the telexes and certificate were hearsay statements admitted into evidence in violation of the Federal Rules of Evidence. They assert that, absent this evidence, the government failed to prove the jurisdictional element of the crime of which they were charged.

■■■ Federal Rule of Evidence 803 provides various exceptions to the hearsay rule, applicable even if the declarant is available to testify at trial. The district court admitted the certificates and telexes under, *inter alia*, Rule 803(24) and we affirm admission on that ground. We recognize that arguments can be made for admission under other exceptions. These, however, give rise to extremely intricate and close questions which we see no need to address when Rule 803(24) provides that a statement not specifically covered by any of the other Rule 803 exceptions may nonetheless be admitted into evidence if "the court determines" that several criteria are met.[2] These criteria involve considerations which are very trial-specific, such as the relative probative value of the hearsay statement and whether admitting the statement will best serve the "interests of justice," Fed.R.Evid. 803(24)(B), (C), considerations that the trial judge generally is in a better position than an appellate court to assess. Accordingly, the district court's ruling is reversible only for abuse of the considerable discretion granted by Rule 803(24) and, absent apparent constitutional violations, we will not disturb the court's

decision whether to admit a statement pursuant to the exception unless we have "a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors." *Page v. Barko Hydraulics*, 673 F.2d 134, 140 (5th Cir. 1982).

We see no such abuse of discretion in this instance. First, appellants have never claimed that the documents were not evidence of a material fact. Second, since it is most unlikely that the government could have procured the attendance of the Commander–In–Chief of the Honduran navy, or other appropriate Honduran official, at trial, we do not see how the prosecutors could have obtained other, more probative evidence of the consent of the Honduran government to the boarding. Also, appellants have not claimed that the Honduran government never actually gave its approval of the boarding of the *Captain Robert* so that the district court very reasonably could have concluded that the ends of justice were best served by admission of the documents. Finally, in light of the fact that the government procedures by which both the Honduran Navy and United States Coast Guard generated these documents seem both normal and regular, we believe that they possessed "circumstantial guarantees of trustworthiness" equivalent to other, enumerated hearsay exceptions of Rule 803. *See, e.g.,* Fed.R.Evid. 803(6), Records of a Regularly Conducted Activity. Defendants also claim that the government did not satisfy the pretrial notice requirement for admission of evidence under Rule 803(24). Some federal appellate courts have interpreted this requirement literally, refusing to admit evidence unless the ad-

---

**2.** Federal Rule of Evidence 803(24) provides:
  The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
    **(24) Other exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable ef-

forts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

verse party has been notified prior to trial. *See United States v. Ruffin*, 575 F.2d 346, 357–58 (2d Cir.1978); *United States v. Davis*, 571 F.2d 1354, 1360 n. 11 (5th Cir. 1978); *United States v. Oates*, 560 F.2d 45, 72 n. 30 (2d Cir.1977). Others have been more flexible, particularly with respect to evidence that the proponent was not aware of prior to the commencement of trial. *See United States v. Bailey*, 581 F.2d 341, 348 (3d Cir.1978); *United States v. Leslie*, 542 F.2d 285, 291 (5th Cir.1976); *United States v. Iaconetti*, 540 F.2d 574, 578 & n. 6 (2d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977); *see also* 4 *Weinstein's Evidence* ¶ 803(24) [10], at 803–380, 381 (1987) (arguing for a flexible approach). Although this court has never considered this issue in the context of a criminal trial, our decision in *Furtado v. Bishop*, 604 F.2d 80, 91–93 (1st Cir.1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980), counsels the adoption of a flexible approach in the particular circumstances of this case.

The certificate was prepared on February 3, 1987, and was officially translated on February 6. The record does not indicate when it was actually turned over to the defendants, but it appears that they received it before the trial because they used it with some familiarity during cross-examination on the first day of trial. Even if the defendants did not receive the certificate before trial, they did not object contemporaneously to the lack of pretrial notice, and, in any case, do not appear to have been prejudiced by it. As regards the telexes, the government only learned about their existence at trial. The trial court ruled that the government's failure to be aware of their existence was "inadvertent and innocent." Trial Transcript, Vol. III, at 77, 90. In fact, it was the defendants who brought out the existence of the telexes on cross-examination. The trial judge gave defense counsel time to inspect these documents, and an opportunity to bring any

problems, including the need for a continuance, to his attention, but defense counsel did not do so. Judge Fusté specifically ruled that defendants had not been "deprived of an adequate or meritorious defense" as a result of the late notice. *Id.* at 78, 90. Nor does defendants' brief on appeal point to any specific prejudice they suffered from the late notice. On the basis of these facts, we find that Judge Fusté did not abuse his discretion.[3] The documents were properly admitted into evidence.

Appellants' related claim that there was insufficient evidence to convict them is based on the premise that the hearsay documentation of Honduran approval of the boarding of their boat should not have been admitted into evidence. Since we uphold the admission of that evidence, we also must reject appellants' challenge to the sufficiency of the evidence.

## II

■ During closing argument, the prosecutor sarcastically referred to four of the defendants as "four innocent bastards." Upon objection by counsel, the prosecutor decided to "withdraw that statement." While even the government admits that this statement was clearly improper, we have no difficulty in concluding that the use of this single phrase in the context of an entire closing argument is harmless error. Rather than reversal on appeal, the proper remedy would have been a reprimand or the imposition of sanctions by the district court. *See United States v. Hasting*, 461 U.S. 499, 506 n. 5, 103 S.Ct. 1974, 1979 n. 5, 76 L.Ed.2d 96 (1983).

■ We have found no evidence in the record that the defendants objected to any other irrelevant or inflammatory comments made by the prosecutors during closing argument. Nonetheless, we feel compelled to remark upon language used by the government throughout its summation. The following are but a few examples.

**3.** Our decision should not be construed as watering down the pretrial notice requirement of Rule 803(24). A flexible approach is warranted only when pretrial notice is wholly impractical. Even under a flexible approach, evidence should be admitted only when the proponent is not responsible for the delay and the adverse party has an adequate opportunity to examine and respond to the evidence.

Puerto Rico, in the past ten, fifteen years has gone through very hard times, you know that. Our government (sic) just went before the House and spoke about the state of this Commonwealth and we have many, many, many, many problems. We have teachers, we have people working for the government in this (sic) hard times and we cannot give them a raise. We cannot give them more money. But worse than that, we have thousands of Puerto Ricans who cannot work, who are unemployed and they wish they were out there working and making the money that they need to raise a family. And probably some of your as some in my family, has (sic) seen hard times, but we are proud and I know all of you are proud in that all along, all during your lives, you have lived with one rule. We will within the law, we will live within the law, because the United States is a nation of law. Tr. Feb. 12, 1987 at 100.

\* \* \* \* \* \*

[A]nd those people instead of fishing for fish, they were fishing for a bigger fish, for money, for dollars, because they came here for greed, they are carriers [of] infamy because that marihuana, that pot, that's infamy, that's the infamy that you smoke. They are messengers of infamy because that's what they were bringing. They are bringing this pot, this poison that is destroying our children in our schools that is bringing to an end our youth, that is changing our society and every day you open the paper and you have to read about more and more problems and our society is not the society that our forefathers had, it is not the society, it is not the same society that our forefathers had an is history that is being recorded here.... Tr. Feb. 12, 1987 at 102.

\* \* \* \* \* \*

And, of course, I am mad. I am mad when I see these people trying to destroy our society and I think that you should be mad too. I think when you have the opportunity to see drug smugglers before you that you should be mad. I don't know if you have children or your children's children, but we are here to protect you.

And they talk about the Coast Guard. The Coast Guard was mad. I think Mr. Hernández was right. We have to be proud that we have people like [those that boarded the Captain Roberts], people that work day and night, that have to go out to the sea, as you remember Mr. Gibbons saying, sixty percent of the time he is out at sea. He has to leave his family, but he is doing it for us. He is doing it for himself. He is doing it for his children and for his children's children because it's hard and it's a lonely job when you are a prosecutor, but I am here amongst all of you because I have to protect our society. That's what all of us have to do. Tr. Feb. 12, 1987 at 104–05.

\* \* \* \* \* \*

I have been married for fifteen years and I still remember the date I met my wife and when.

My first and second child were born and it's been six and seven years later and I still remember that date because they are dates that you don't forget that easy, but [the defendant] couldn't remember when he had met his girlfriend because he couldn't remember this date that he had been to Colombia for the first time.... Tr. Feb. 12, 1987 at 106.

\* \* \* \* \* \*

Couching their poor innocent faces, there is a license because they are poor and innocent, that is a license to kill our youth in the United States, to poison the minds of our people. How many are out there in our own country that are poor and do not go out and do criminal acts. Brief for Appellee at 36 (transcript for this part of argument not provided to this court).

Needless to say, none of these statements had any basis in the record. Nor can we see how any of these matters were even remotely related to the issue of whether the defendants were guilty as charged. In fact, these sections of the prosecutors' closing argument are an ap-

parent call for the jury to get even for all the wrongs imposed on the good people of our society (such as the prosecutors themselves) by punishing the defendants.

■ The American Bar Association Standard for Criminal Justice 4–7.8 provides, in part:

(c) A lawyer should not make arguments calculated to inflame the passions or prejudices of the jury.

(d) A lawyer should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict.

(e) It is the responsibility of the court to ensure that final argument to the jury is kept within proper, accepted bounds.

Perhaps more importantly, American Bar Association Model Rule of Professional Conduct 3.4(e), incorporated into the local rules of the Puerto Rico District Court via rule 211.4(B), commands that "[a] lawyer shall not in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence ... or state a personal opinion as to the justness of a cause ... or the guilt or innocence of an accused." Furthermore, the Supreme Court has long "counselled prosecutors 'to refrain from improper methods calculated to produce a wrongful conviction....'" *United States v. Young*, 470 U.S. 1, 7, 105 S.Ct. 1038, 1042, 84 L.Ed.2d 1 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)).[4]

The prosecutors' comments quoted above are most fundamental violations of these tenets. We can perceive no purpose for such irrelevant references other than "to inflame the passions and prejudices of the jury," and to "interject[ ] issues broader than the guilt or innocence of the accused." Since they were not relevant to the guilt or innocence of the accused, they can only be designed to encourage the jury to decide on an improper basis and thus were "calculated to produce a wrongful verdict." While such behavior, as violations of local rules, may provide cause for the district court to sanction the prosecutors, it may also constitute reversible error when it is not stopped by the trial judge and followed by a strong and succinct curative instruction. *See, e.g., Polansky v. CNA Insurance Co.*, 852 F.2d 626, 628–30 (1st Cir.1988); *United States v. González Vargas*, 558 F.2d 631, 633 (1st Cir.1977).

As noted above, however, appellants failed to object to the closing arguments of the government, on the basis that it was irrelevant or inflammatory (appellants did object for other reasons), except on the one occasion when a prosecutor called appellants "bastards." We thus may notice the other remarks of the prosecutors, pursuant to Federal Rule of Criminal Procedure 52(b), only if they rose to the level of "plain error." *Young*, 470 U.S. at 14–16, 105 S.Ct. at 1045–46. We apply this exception to the contemporaneous objection rule "solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982).

While we have no doubt that the comments by the government prosecutors were

---

**4.** A prosecutor does not represent an entity whose interests include "winning" at all costs. Instead, his client is society, seeking justice rather than victory. The prosecution, therefore, must never lose sight of the fundamental principle that "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). As society's champion

[an attorney representing the United States] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all, and whose interest, ... is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.
*Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

totally unjustified, we do not believe that we permit a miscarriage of justice by nonetheless upholding appellants' convictions. The evidence against them on the possession charge was simply too overwhelming. Substantial and uncontradicted testimony unequivocally established that all were found on board a vessel overloaded with hundreds of bales of marijuana, and that the Coast Guard had the permission of the Honduran government to board the vessel. Conversely, we cannot conceive of how a reasonable juror could have believed appellants' explanation that they were boarded by pirates, forced to take on perhaps eight million dollars worth of contraband, and then abandoned by those scoundrels who yet, even in their absence, somehow compelled their victims to proceed on a forced journey. Our conclusion that the prosecutors' egregious misconduct had no effect on the outcome of appellants' trial is also bolstered by the fact that all appellants were acquitted on the importation charge. This indicates that the jury, despite the conduct of the prosecutors, was able to consider objectively whether the government had proven each element of each crime, finding beyond a reasonable doubt intent to possess but not to import into the United States. We thus believe that the jury was able to separate the wheat of the government's case from the chaff of the prosecutors' closing arguments.[5]

Notwithstanding the affirmance of the convictions, we strongly admonish the conduct of the government's representative in this case.

Appellants' convictions are *affirmed*.

---

**5.** We have considered and find without merit appellants' additional claims that (1) there was insufficient evidence of the weight of the marijuana found by the Coast Guard and (2) the district court considered improper factors in sentencing certain defendants. In the record, there is substantial testimony regarding the quantity of marijuana seized, while there is an absence of any evidence that the district court acted in response to forbidden considerations when sentencing the defendants.