**UNITED STATES of America, Appellee,**

v.

**Hector M. RODRIGUEZ-ESTRADA,**
**Defendant, Appellant.**

**No. 88-2093.**

United States Court of Appeals,
First Circuit.

Heard May 5, 1989.

Decided June 14, 1989.

Jose R. Aguayo with whom Joaquin Monserrate Matienzo, Hato Rey, was on brief, for defendant, appellant.

Luis A. Plaza, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for U.S.

Before SELYA and ALDRICH, Circuit Judges, and RE,* Judge.

SELYA, Circuit Judge.

We turn to the latest chapter in the engrossing saga of the El San Juan Hotel. Unlike many epics, the tale—arising out of financial difficulties which brought the luxurious resort hotel onto the reefs of an ill-fated Chapter 11 reorganization and thereafter onto the shoals of a Chapter 7 liquidation—is short on heroes. We have chronicled the general nature of the hotel's vicissitudes in a series of previous civil cases, *see, e.g., In re San Juan Hotel Corp.,* 847 F.2d 931 (1st Cir.1988); *In re El San Juan Hotel Corp.* 841 F.2d 6 (1st Cir.1988); *Connecticut General Life Ins. Co. v. Universal Ins. Co.,* 838 F.2d 612 (1st Cir.1988); *In re El San Juan Hotel,* 809 F.2d 151 (1st Cir.1987); and we need not respade that much-dug terrain. For our purposes, it suffices to say that the criminal prosecution which underlies the instant appeal is related to many of the same events. The defendant, Hector Rodriguez Estrada (Rodriguez), who served at various times as trustee of the debtor corporation, remains the central character in the drama.

Rodriguez was indicted by a federal grand jury on a myriad of charges involving embezzlement, misappropriation of property belonging to the bankruptcy estate, fraudulent withholding of financial records from the successor trustee, and false statements to the Internal Revenue Service. After a five day trial, a jury found Rodriguez guilty of twenty counts of embezzlement, 18 U.S.C. § 153; three false statement counts, 18 U.S.C. § 1001; and one count which charged that he unlawful-

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

ly withheld information relating to the affairs of the debtor in violation of 18 U.S.C. § 152. At the same time, the jury exonerated defendant on several other counts. Following imposition of sentence, Rodriguez appealed.

We consider each of defendant's three assignments of error; but, given the plethora of opinions which pave our way, including the district court's expository account of Rodriguez's alleged foibles, *see In re San Juan Hotel Corp.,* 71 B.R. 413, 418–26 (D.P.R.1987), we think it unnecessary to embark upon yet another exegesis. Rather, we will discuss the facts only to the extent necessary to put appellant's main arguments into perspective.

### Other Bad Acts

The first issue raised on appeal relates to the twenty charges of embezzlement. Each count represented a weekly expense allowance paid to appellant from the debtor's funds. Rodriguez portrayed these payments as comprising reimbursement for expenses legitimately incurred in the course of official duties. The prosecution had a markedly different theory: the claimed expenses were bogus and the allowances no more than an avaricious device to milk the bankruptcy estate.

At trial, the prosecution introduced the twenty checks upon which the embezzlement counts were predicated. Then, over defendant's objection, the district court allowed into evidence thirty-one similar checks drawn to appellant's order. While acknowledging that these checks were obtained under virtually identical circumstances,[1] appellant contends that their admission was cumulative, confusing, and unfairly prejudicial.

■ Determining the admissibility of evidence of other (uncharged) bad acts requires a bifurcated inquiry. First, the district court must be satisfied that the proffered material has "special" probative value, that is, that the evidence is relevant not to show a defendant's propensity toward evil, but to prove some controverted issue in the case. *See, e.g., United States v. Flores Perez,* 849 F.2d 1, 4–6 (1st Cir.1988); *United States v. Ingraham,* 832 F.2d 229, 231 (1st Cir.1987), *cert. denied,* ––– U.S. –––, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988); *United States v. Lau,* 828 F.2d 871, 874 (1st Cir.1987), *cert. denied,* ––– U.S. –––, 108 S.Ct. 1729, 100 L.Ed.2d 194 (1988). Thus, evidence of other bad acts may be relevant to show, say, a defendant's intent, or his knowledge, or the existence of a scheme. *See* Fed.R.Evid. 404(b).[2]

Once shown to be relevant in the requisite sense, the evidence must pass still another sentry, embodied in Fed.R.Evid. 403.[3] If the evidence brings unwanted baggage, say, unfair prejudice or a cognizable risk of confusing the jury, and if the baggage's weight substantially overbalances any probative value, then the evidence must be excluded. *See United States v. Collamore,* 868 F.2d 24, 29 (1st Cir.1989); *Flores Perez,* 849 F.2d at 4. Such determinations are committed to the trial court's sound discretion. *Ingraham,* 832 F.2d at 231. "Only rarely—and in extraordinarily compelling circumstances—will we, from the

---

1. The additional thirty-one checks were issued earlier in time, on appellant's orders. They began with a series of payments at the rate of $1350/wk. On June 4, 1982, the rate dropped to $300/wk. The last check was dated one week before the first check in the series of twenty (upon which the pertinent counts of the indictment were predicated). It appears that no criminal charges were based on the earlier checks because of likely limitations problems.

2. The rule states:

   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

   Fed.R.Evid. 404(b).

3. The rule states:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

   Fed.R.Evid. 403.

vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the ... weighing of probative value and unfair effect." *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1340 (1st Cir.1988); *see also Lau*, 828 F.2d at 874 (noting that trial court "is more directly familiar than a court of appeals with the need for the evidence and its likely effect on the jury").

■ In the present case, we see little question but that the thirty-one checks were appropriately admitted. Inasmuch as the checks were virtual replicas of those that formed the basis of the indictment, they afforded compelling proof of intent to embezzle, existence of a calculated plan to siphon off funds, and absence of mistake. We have said before, and today reaffirm, that extrinsic offense evidence which is "inextricably intertwined" with the crimes charged is often admissible under Rule 404(b). *United States v. Fields*, 871 F.2d 188, 193 (1st Cir.1989) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983), *cert. denied*, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984)); *see also United States v. D'Alora*, 585 F.2d 16, 20 (1st Cir.1978) (discussing admission of proof of prior conduct to "complete the story of the crime on trial") (citation omitted). When, as in this case, the linked incident occurs close in time, and is highly relevant, to the charged conduct, the argument for admissibility is powerful. *See Fields*, 871 F.2d at 196–97. The thirty-one checks plainly possessed the necessary relevance and special probative value.

Nor was the probative value of this evidence necessarily outweighed by adverse considerations. To be sure, the evidence was somewhat cumulative; but in this case, the repetition of the conduct was itself distinctly probative. That the evidence helped the prosecution and hurt the defendant's chances cannot be gainsaid—but that did not require exclusion. By design, all evidence is meant to be prejudicial; it is

only *unfair* prejudice which must be avoided. *Ingraham*, 832 F.2d at 233–34; *Onujiogu v. United States*, 817 F.2d 3, 6 (1st Cir.1987). Given the clarity of the court's charge and the frequency of its cautionary instructions, there was small risk of confusion.

When all is said and done, the district court must be ceded considerable latitude in steadying the balance which Rule 403 demands. *See Ingraham*, 832 F.2d at 233–34; *United States v. King*, 827 F.2d 864, 867 (1st Cir.1987) (per curiam). The trial judge, after all, "is Johnny-on-the spot; he has savored the full taste of the fray, and his considerable discretion must be respected so long as he does not stray entirely beyond the pale." *United States v. Tierney*, 760 F.2d 382, 388 (1st Cir.), *cert. denied*, 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). In this instance, the judge stayed well within bounds.

### The Rule 29 Motion

At the close of the prosecution's case, appellant moved for acquittal on the embezzlement counts under Fed.R.Crim.P. 29(a).[4] He grounded entitlement to acquittal on the basis that, in a prior civil case, we had held the evidence insufficient to sustain a finding that Rodriguez misappropriated the expense allowances. *See In re San Juan Hotel Corp.*, 847 F.2d at 953–54. The district court rejected the motion, pointing out that the government did not have the requisite opportunity fully to litigate the issue in the civil suit. Rodriguez then went forward with his defense. At the close of all the evidence, he chose not to renew the Rule 29 motion.

■ We think appellant's point has been procedurally defaulted. When a motion for judgment of acquittal is denied at the close of the government's case, the defendant's election to offer evidence constitutes a waiver of the motion. *See United States v. Notarantonio*, 758 F.2d 777, 788 (1st Cir.1985); *United States v. Green-*

---

**4.** The rule provides in pertinent part:

The court on motion of a defendant ... shall order the entry of judgment of acquittal ... after the evidence on either side is closed if

the evidence is insufficient to sustain a conviction of [the charged] offense or offenses. Fed.R.Crim.P. 29(a).

*leaf,* 692 F.2d 182, 185 (1st Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983). To retain its vitality, the Rule 29 motion must be renewed at the close of all the evidence. *See United States v. Cheung,* 836 F.2d 729, 730 n. 1 (1st Cir.1988) (per curiam). Failing a timely end-of-case motion, we treat the point as defaulted and will only disturb an ensuing conviction to prevent "clear and gross injustice." *United States v. Jimenez Perez,* 869 F.2d 9, 11 (1st Cir.1989); *Cheung,* 836 F.2d at 730 n. 1; *Greenleaf,* 692 F.2d at 185. For three reasons, we believe justice did not miscarry here.

■ First, it is not at all plain that the issue in the two suits was the same. The expense checks were drawn on the debtor's account at a New York bank. After Rodriguez endorsed them, they were stamped for deposit to one of debtor's accounts at a San Juan bank. In the civil case, the district court found that the allowances were bogus in that they were unsupported by documented expenses. *In re San Juan Hotel Corp.,* 71 B.R. at 425. We did not pass definitively upon this finding, but reversed the resultant surcharge on the ground that the successor trustee had shown "no harm to the estate because the same money was redeposited in another hotel account." *In re San Juan Hotel Corp.* 847 F.2d at 954. We noted the possibility "that once the money was placed into the [second hotel] account, it was then incrementally withdrawn by Rodriguez for his own benefit." *Id.* But, we did not pursue that inquiry because Rodriguez had been surcharged not for taking excess expenses generally, but for the expenses "drawn by defendant against the [New York] account." *In re San Juan Hotel Corp.,* 71 B.R. at 428. The criminal case, on the other hand, charged embezzlement of the funds, *in whatever form;* and the proof showed that, though the checks were indeed deposited into the second (San Juan) account, they were simultaneously converted to cash by Rodriguez, and the cash embezzled. On this record, there seems little basis for collateral estoppel, especially since the doctrine has long been thought inoperative as to "evidentiary or 'mediate'

facts." *Yates v. United States,* 354 U.S. 298, 338, 77 S.Ct. 1064, 1087, 1 L.Ed.2d 1356 (1957).

Second, it is not clear that the parties in the two cases were the same. In the civil suit, Hans Lopez Stubbe, the successor trustee, was the named plaintiff. And, while the United States prosecuted the suit, it did so not on its own behalf but "on behalf of the [bankruptcy] estate." *In re San Juan Hotel Corp.,* 847 F.2d at 935. The government's allegiance, one would think, must have been to the creditors, not to the public.

Third, we are reluctant to strain to find an estoppel where one side in a criminal case seeks to control the course of the prosecution by reference to an earlier civil case. In *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the Supreme Court drew a sharp distinction between civil and criminal cases for purposes of collateral estoppel. Chief Justice Burger, writing for a unanimous Court, noted that criminal cases "involve[ ] an ingredient not present in [civil cases]: the important federal interest in the enforcement of the criminal law." *Id.* at 24, 100 S.Ct. at 2008. On the civil side, where disputes arise out of private rights, "no significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and there is no sound reason for burdening the courts with repetitive litigation." *Id.* When a criminal prosecution is mounted, however, policy considerations unique to the criminal justice system often "outweigh the economy concerns that undergird the estoppel doctrine." *Id.* at 25, 100 S.Ct. at 2008. Indeed,

> [T]he purpose of a criminal court is . . . to vindicate the public interest in the enforcement of the criminal law. . . . The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases.

*Id.* (citation omitted). Given the procedural constraints unique to bankruptcy procedure, and the relatively inconsequential role that the expense allowances played in

the bankruptcy litigation,[5] we think this case, in light of the concerns suggested by the *Standefer* Court, to be a poor candidate for an expansive use of collateral estoppel.

For these reasons, we cannot say that the district court's refusal to invoke collateral estoppel in bar of the embezzlement counts worked a clear and gross injustice.

### The Summation

The third assignment of error relates to appellant's claim of prosecutorial misconduct during closing argument. We begin by acknowledging that the government's summation, read in its entirety, was not a model of either statesmanship or craftsmanship. But, churlish though the prosecutor's argument was, the defense's summation was cut from much the same coarse cloth. We hasten to affirm that two wrongs do not make a right. Nevertheless, it strikes a jarring note when the pot proposes to call the kettle black. Moreover, epithets—if effective at all—are less likely to sway a jury if they are being hurled with equal fury by both sides. And a prosecutor deserves some leeway to respond to inflammatory attacks mounted by defense counsel. *See United States v. Mejia-Lozano*, 829 F.2d 268, 274 (1st Cir. 1987).

Appellant assails numerous parts of the prosecutor's final argument. We find some of the cited statements innocuous, others within the bounds of propriety, and a few taken out of context. We need not recount the details. Nor would it be profitable to catalogue an array of challenged statements which were not the subject of contemporaneous objection. Absent plain error—and there was none in this situation —a party's failure to object at the time of the summation forecloses appellate review. *See Mejia-Lozano*, 829 F.2d at 272; *United States v. Griffin*, 818 F.2d 97, 99–100 &

n. 1 (1st Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). "Counsel cannot play a waiting game and after an adverse verdict is rendered raise an objection to argument for the first time." *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 609 (1st Cir.1985).

█ Withal, the prosecutor crossed the line when discussing the testimony of the witness Alago. By expressing his assurance that Alago was telling the truth, the prosecutor was out of bounds. *See, e.g., Mejia-Lozano*, 829 F.2d at 273 ("it is wrong for a prosecuting attorney to inject his personal beliefs into his summation"); *United States v. Cresta*, 825 F.2d 538, 555 (1st Cir.1987) (similar), *cert. denied,* —— U.S. ——, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988). The impact of the vouching was considerably softened, however, because the prosecutor also told the venire that there was "conflicting evidence" as to Alago's main points, and reminded the jury that they were the judges of the witnesses' demeanor and credibility. More important, when the defense objected to this remark, the district court firmly admonished the prosecutor and gave an immediate curative instruction. Though we disapprove of vouching in the strongest possible terms, we cannot realistically predicate reversible error on this bevue.

█ The second discerned impropriety is even more disconcerting. The Assistant United States Attorney (AUSA) called appellant a "liar"—not once, but twice—and a "crook," and boasted to the jury that he (the AUSA) "had the courage" to call Rodriguez such names. That these statements were improper is so clear as not to brook serious discussion.[6] We remind the government that while a prosecutor "may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United*

---

5. In the civil suit, Rodriguez Estrada was surcharged for a minimum of $3,434,081.82, *In re San Juan Hotel Corp.*, 71 B.R. at 428, with a likely add-on of close to $1,000,000 for other as-yet-undetermined amounts. *Id.* at 427, 428. The twenty embezzlement counts were predicated upon the aggregate sum of $6000; the cumulative total of expense allowances involved in the civil suit was $37,350. Under the circum-

stances, to allow use of a blanket rule of collateral estoppel (as defendant urges) would be to permit a very small tail to wag a very large dog.

6. The concluding flourish was not only ultracrepidarian, but untrue. Name-calling is quintessentially a cowardly exercise which requires no true courage.

*States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); *see also Palmariello v. Sup't of MCI Norfolk,* 873 F.2d 491, 494 (1st Cir.1989) ("A prosecutor is permitted vigorous advocacy, so long as he does not stray into forbidden terrain."). To be sure, a trial is not a tea party, and a criminal defendant is not entitled "to a prosecutorial summing-up confined to platitudes and euphemisms." *Palmariello,* at 494. Nevertheless, the prosecutor's obligation to desist from the use of pejorative language and inflammatory rhetoric is every bit as solemn as his obligation to attempt to bring the guilty to account.

Because the AUSA went too far, we must consider whether these remarks were sufficiently prejudicial as to warrant a retrial. To make this analysis, we consider a range of factors, starting with the nature of the prosecutor's (mis)conduct and ending with the unavoidable bottom line: whether we deem it likely, or not, that any prejudice affected the outcome of the case. *See, e.g., Mejia–Lozano,* 829 F.2d at 274; *Cresta,* 825 F.2d at 556; *United States v. Giry,* 818 F.2d 120, 133 (1st Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 162, 98 L.Ed.2d 116 (1987); *United States v. Maccini,* 721 F.2d 840, 846 (1st Cir.1983). And in the process, we view the comments not in sterile isolation, but within the framework and context of the actual trial.

In this case, the bottom line is not much in doubt. Although the AUSA's remarks were totally inappropriate, we see no grounds for reversal. For one thing, the prosecutor's oratory was counterbalanced to a great extent by equally fiery—equally improper—rhetoric employed by defense counsel.[7] Here, as in *United States v. Gallagher,* 735 F.2d 641, 644 (1st Cir.1984), the defense's argument tended to "neutralize the harm flowing from the prosecutor's remarks." *See also Maccini,* 721 F.2d at 846. Moreover, the judge's final instructions to the jury were strong and clear; indeed, the fact that defendant was acquit-

ted on several counts indicates that the jury was not overborne, but remained capable of "consider[ing] objectively whether the government had proven each element of each crime." *United States v. Doe,* 860 F.2d 488, 495 (1st Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct.1961, 104 L.Ed.2d 430 (1989). And the government's evidence against Rodriguez on the counts at issue was nothing short of overwhelming—a salient factor in assessing the likely effect of counsel's ill-advised oratory. *E.g., Doe,* 860 F.2d at 495; *Mejia–Lozano,* 829 F.2d at 274; *Gallagher,* 735 F.2d at 644; *Maccini,* 721 F.2d at 847.

To the extent that the summation was improper, and error preserved, there was no cognizable harm. Though the prosecutor's unseemly remarks "le[ft] a sour taste, [they] did not irretrievably poison the well." *Mejia–Lozano,* 829 F.2d at 274. The outcome of the trial was unaffected.

### Conclusion

We need go no further, but may now close the book on this chapter of the El San Juan Hotel saga. We are satisfied, based on our examination of the record, that Rodriguez was fairly tried and justly convicted. None of his assignments of error can prevail.

*Affirmed.*

---

7. Defendant's attorney, for example, used the words "lie" and "liar" with abandon during his summation, asking plaintively on one occasion

"[w]hy a Christian human being would do a thing and lie like that?"