January 5, 1993
 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-1612

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 JOSEPH SMITH,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Raymond J. Pettine, Senior U.S. District Judge]
 

 

 Before

 Selya, Cyr and Boudin,

 Circuit Judges.
 

 

 Ernest Barone for appellant.
 
 Margaret E. Curran, Assistant United States Attorney, with whom
 
Lincoln C. Almond, United States Attorney, and Lawrence D. Gaynor,
 
Assistant United States Attorney, were on brief for appellee.

 

 

 CYR, Circuit Judge. Defendant Joseph Smith appeals his
 CYR, Circuit Judge
 

conviction for possessing a firearm after having been convicted

of a felony, in violation of 18 U.S.C. 922(g)(1), claiming that

the government's closing argument deprived him of a fair trial.

We affirm.

 I

 BACKGROUND
 

 The following facts are undisputed. On August 4, 1991,

Patrolman Robert Brown, Jr., responded to a reported disturbance

at the Hot Club in Providence, Rhode Island. After assisting in

resolving the dispute, Officer Brown was told by a patron that

another disturbance had broken out between two men in a nearby

parking lot. As Brown approached the parking lot, a woman

standing near him screamed: "That man has a gun!" In the

direction indicated by the woman, the officer saw appellant Smith

standing alone, and other people running away from Smith.

 The officer approached appellant and told him to drop

the gun. Smith held out his palms, which were empty, and said,

"I ain't got no gun," then turned and ran. Officer Brown gave

chase and radioed for assistance. Following a two-to-three

minute chase, covering one-quarter to one-half mile, Smith was

apprehended; an unloaded .25 caliber automatic handgun was

removed from his waistband. Appellant's sole defense at trial

wasthathispossessionofthe firearmwasjustifiedinthe circumstances.

 According to his own testimony, appellant had been

standing outside the club when another man said to him: "Hey

Joe, I've got your f'ing girlfriend." Turning around, appellant

saw a man, whom he identified as George Sacco, restraining

appellant's girlfriend, Deirdre Machado, and holding a gun to her

side. Appellant testified that he approached Sacco, who tripped,

and, after they scuffled, appellant grabbed the gun from Sacco.

Appellant testified that it was Machado who yelled: "That man

has a gun," and that Machado had meant that Sacco had a gun.

Appellant admitted at trial that he had denied having a gun when

asked by Officer Brown, and had started to run. Deirdre Machado

essentially corroborated appellant's version of the events.

Officer Brown, on the other hand, testified that he was

acquainted with Machado and that she was not the woman who had

yelled to him that night.

 II

 DISCUSSION
 

 Appellant claims that the government's closing argument

deprived him of a fair trial by disparaging the credibility of

the witnesses for the defense and infringing upon the fact-

finding function reserved to the jury. As there was no objection

at trial, we review for plain error, United States v. Grant, 971
 

F.2d 799, 810 (1st Cir. 1992) (en banc); United States v.
 

Nickens, 955 F.2d 112, 120 (1st Cir.), cert. denied, 113 S. Ct.
 

108 (1992), which means we must evaluate the prosecutor's

 3

statements in light of the entire record, Grant, 971 F.2d at 810,
 

and may overturn the jury verdict only if the government's

closing argument "so poisoned the well" that it is likely that

the verdict was affected. United States v. Mejia-Lozano, 829
 

F.2d 268, 274 (1st Cir. 1987); United States v. Panet-Collazo,
 

960 F.2d 256, 260 (1st Cir.), cert. denied, 113 S. Ct. 220
 

(1992). We discern no plain error.

 According to appellant, the prosecutor's statements in

closing argument that Sacco did not exist, appellant and

Machado were lying, and appellant was guilty improperly

implied that the prosecutor possessed knowledge beyond the

purview of the evidence and improperly invoked the authority of

his office to bolster his interpretation of the evidence. The

crux of appellant's claim is that his and Machado's testimony

concerning George Sacco's role was uncontradicted and, therefore,

there was no evidence on which to predicate the prosecutor's
 

contention that he and Machado were lying; accordingly, were the

jury to credit their testimony, there was sufficient evidence to

acquit on the justification defense.

 Although it is plainly improper for a prosecutor to

imply reliance on knowledge or evidence not available to the

jury, United States v. Cain, 544 F.2d 1113, 1116 (1st Cir. 1976);
 

Patriarca v. United States, 402 F.2d 314, 321 (1st Cir. 1968),
 

cert. denied, 393 U.S. 1022 (1969), there was no such intimation
 

in this case. Rather, considered in the context of the closing

argument as a whole, the comments cited by appellant that

 4

there was no Sacco and that Machado belatedly concocted the story

to prevent appellant from being convicted suggested inferences

the jury might draw from the evidence,1 a proper subject of

comment by the prosecutor. The government may attempt to

persuade the jury to draw suggested inferences unfavorable to the

defense, as long as the prosecutor's own opinion as to the
 

witness' credibility is not urged on the jury. See, e.g., United
 

States v. Mount, 896 F.2d 612, 625 (1st Cir. 1990).
 

 During closing argument, the prosecutor reminded the

jury that Officer Brown had testified that at the time the

unidentified woman screamed: "That man has a gun!" Brown saw

no one else near the scene, except appellant and other persons

running from appellant. The prosecutor further reminded the jury
 

that Officer Brown had testified that the unidentified woman was

not Deirdre Machado. Finally, the prosecutor noted that Machado

admitted at trial that she had never before told the police, or

 

 1These comments were as follows:

 This business about Sacco is a complete fabri-
 cation. That's what the evidence shows.
 
 . . . .
 Does that sound like someone who's worthy of
 belief to you? Of course not. She [Machado] never did
 those things, ladies and gentlemen. She never filed a
 complaint against Sacco because Sacco never did any-
 thing. There was no Sacco. It's a convenient story.
 It's a complete fabrication. She never tried to help
 him out [by filing a complaint] because he's guilty.
 He didn't do anything to disarm Sacco and save her.
 That's a lot of nonsense.
 There was no George Sacco anyplace because George
 Sacco wasn't there.

(Emphasis added.)

 5

anyone else, about being restrained at gunpoint by Sacco, even

though she was appellant's friend and believed he was being

charged with a crime that had been prompted by his desire to

protect her from Sacco.

 Although the phrasing of the prosecutor's argument left

something to be desired, it was not improper to urge the jury to

evaluate the plausibility of the justification defense in light

of the other evidence (and the lack thereof), as well as the

motivations and biases of the defense witnesses, including

appellant. See United States v. Savarese, 649 F.2d 83, 87 (1st
 

Cir. 1981) (defendant "had no right to expect the government to

refrain from commenting on the quality of his . . . witnesses or

from attacking the weak evidentiary foundation on which the

[defense] rested"); Mount, 896 F.2d at 626 (not improper for
 

government to argue that its interpretation of the evidence was

more persuasive); United States v. Glantz, 810 F.2d 316, 321 (1st
 

Cir.), cert. denied, 482 U.S. 929 (1987) (government is entitled
 

to comment on plausibility of defense theory). Nevertheless, the

government's closing unnecessarily risked the impression that the

prosecutor was vouching, either personally or on the strength of

other extraneous considerations, that George Sacco did not exist,

rather than merely urging the jury to so conclude on the basis of
 

the evidence. See, e.g., United States v. Turner, 892 F.2d 11,
 

14 (1st Cir. 1989) ("[i]t is the jury's responsibility to

evaluate the credibility of the evidence presented"). Similarly,

the prosecutor's repeated statements that the defendant was

 6

guilty verged on the exclusive province of the jury to determine

guilt. Of course, any representation as to the prosecutor's

personal belief in the guilt of an accused is improper. Nickens,
 

955 F.2d at 121; Mejia-Lozano, 829 F.2d at 273.2 The means to
 

eliminate even an appearance of overreaching were at hand; the

prosecutor need simply have predicated these entreaties

explicitly and exclusively on reasonable inferences yielded by
 

the evidence. See Cain, 544 F.2d at 1116 (prosecutor's argument
 

that accused is guilty is not improper, provided it calls for the

jury's assessment of the evidence and is not presented as the

personal opinion of the prosecutor).3

 

 2The government concedes that the prosecutor, on at least
one other occasion, implied a personal belief in appellant's
guilt. The prosecutor stated:

 I think when you look at the evidence in this case
 
 and use your common sense, there's only one conclusion
 you can reach and that is that this defendant Joseph
 Smith has been proved guilty beyond a reasonable doubt.

(Emphasis added.) The prosecutor's statement could have been
purged and converted into permissible argument by a simple re-
phrasing: "The government submits . . ."
 Another statement by the prosecutor that even if appel-
lant's story were believed he was "still guilty" because he had
not established a justification defense permissibly urged a
reasonable inference based directly and exclusively on the
evidence. See infra at pp. 10-12.
 

 3Recognizing its special obligation to see that justice is
done and to refrain from improper methods in seeking a
conviction, see United States v. Quesada-Bonilla, 952 F.2d 597,
 
602 (1st Cir. 1991); Berger v. United States, 295 U.S. 78, 88
 
(1935), the government forthrightly concedes improprieties in
certain other statements made in its closing argument.
 It concedes that it impermissibly used pejorative language
in repeatedly characterizing the testimony of appellant and
Machado as lies. See United States v. Rodriguez-Estrada, 877
 
F.2d 153, 159 (1st Cir. 1989) ("prosecutor's obligation to desist
from the use of pejorative language . . . is every bit as solemn

 7

 A new trial is unwarranted so long as we are able to

conclude with a high degree of confidence that the alleged

prosecutorial misconduct did not affect the outcome of the trial.

Mejia-Lozano, 829 F.2d at 274; Panet-Collazo, 960 F.2d at 260.
 

The strength of the case against the defendant often is the most

significant factor to be balanced against the prosecutorial

misconduct. United States v. Boldt, 929 F.2d 35, 41 (1st Cir.
 

1991); Rodriguez-Estrada, 877 F.2d at 159. We therefore examine
 

the evidence, and other relevant factors, to determine whether

the alleged prosecutorial misconduct warranted a new trial.

 The prejudice from the errant statements in the

prosecutor's closing argument was mitigated somewhat by their

context and ambiguity. See Grant, 971 F.2d at 810. Cf. United
 

States v. Ingraldi, 793 F.2d 408, 416 (1st Cir. 1986) (among
 

factors for determining whether new trial is warranted is "the

severity of the misconduct"); United States v. Brown, 938 F.2d
 

1482, 1489 (1st Cir.), cert. denied, 112 S. Ct. 611 (1991)
 

(same). Although their ambiguity perhaps risked jury confusion
 

as to its role as the sole arbiter of guilt and finder of the

facts, the prosecutor's contentions that appellant's

 

as his obligation to attempt to bring the guilty to account");
cf. Nickens, 955 F.2d at 121 ("[i]t is . . . inappropriate for a
 
prosecutor to call defendant a liar"). The prosecutor character-
ized their testimony as "a lie," "one tall tale," and "a complete
fabrication." The government concedes as well that it was
improper for the prosecutor to state that he "welcomed" the
burden of proof in this case. See United States v. Flaherty, 668
 
F.2d 566, 597 (1st Cir. 1981) (statement told jury "of the
Government's confidence that the evidence would show guilt beyond
a reasonable doubt").

 8

justification defense had been concocted and that he was guilty

were in no sense objectionable as mischaracterizations of the

evidence, but because they were too loosely linked to the
 

evidence, hence may have conveyed the personal opinion of the

prosecutor. Cf. United States v. Farnkoff, 535 F.2d 661, 668
 

(1st Cir. 1976) (the fact that the prosecutor made clear that the

jury should arrive at its verdict, based on the evidence,

mitigated the effect of statement that defendant was guilty).4

Absent any suggestion of superior knowledge or personal opinion

on the part of the prosecutor, similar argumentation has been

found not to be improper. See United States v. Garcia, 818 F.2d
 

136, 143-44 (1st Cir. 1987) ("Although we think a prosecutor

would be well advised to avoid directly accusing a defendant of

lying since jurors could believe the government has knowledge

outside the evidence about the defendant's veracity we are

confident that the statements in this case would have been

 

 4The court firmly advised the jury in its opening
instructions as follows:

 [Y]ou are the judges of the facts. You have to decide
 what actually happened in this case. You and you alone
 make that decision. No one, simply no one can trespass
 on that very specialized unique area that is
 exclusively yours . . .

 In its final jury charge, the court reiterated: "Remember,
I told you that you are the sole judges of the facts. You alone
decide the facts . . . You are the sole judges of the facts."
 Contemporaneous curative instructions were not given, as
none were requested. In its opening jury instructions, however,
the district court informed the jury that the statements of
counsel are not evidence. In its final charge, given the same
day as its opening instructions, the court reminded the jury that
the evidence was limited to the testimony of the witnesses and
the exhibits admitted by the court.

 9

perceived only as commentary on the implausibility of the defen-

dant's story."). Nor did the overzealous statement that the

prosecutor "welcome[d]" the burden of proof constitute reversible

error, as its context did not suggest that the prosecutor's

confidence was founded on knowledge or evidence unavailable to

the jury.5 See Flaherty, 668 F.2d at 597. Viewed in context,
 

these ambiguous statements were not "so egregious that [they]

'seriously affect[ed] the fairness, integrity or public

reputation of judicial proceedings.'" Nickens, 955 F.2d at 121
 

(quoting United States v. Young, 470 U.S. 1, 15 (1985)).6
 

 Even more importantly, however, the prosecutor's

statements must be considered harmless error in view of the

uncontested evidence against appellant. The entire defense was
 

that appellant's possession of the firearm was justified. Among

the essential elements of a justification defense, see, e.g.,
 

United States v. Lemon, 824 F.2d 763, 765 (9th Cir. 1987)
 

(defining four elements); United States v. Gant, 691 F.2d 1159,
 

1162-63 (5th Cir. 1982) (same), is the "requirement that the

defendant have no alternative to possession of the firearm [and]

that the defendant get rid of the firearm as soon as a safe

opportunity arises." United States v. Singleton, 902 F.2d 471,
 

473 (6th Cir.), cert. denied, 111 S. Ct. 196 (1990).
 

 

 5The statement was as follows: "[T]he government has the
burden of proof in this case and I welcome that burden, ladies
and gentlemen, because in this case we have proven the defendant
guilty beyond a reasonable doubt."

 6See also supra note 4.
 

 10

 The jury's rejection of the justification defense did

not depend on their discounting, in any measure whatever, either
 

Machado's or appellant's testimony about Sacco's involvement.

Appellant took the stand and admitted that he had denied having a

firearm when asked by Officer Brown, then fled with the firearm

still in his possession. There was no contention that appellant

believed he was in any physical danger from Officer Brown, but
 

only from Sacco. Thus, even assuming appellant's possession of

the firearm was justified at the outset, his refusal to surrender

it at the request of a police officer from whom he did not fear

bodily harm (as distinguished from arrest for illegal

possession), rendered the justification defense unsupportable

under any view of the evidence. See United States v. Stover, 822
 

F.2d 48, 50 (8th Cir. 1987) (justification defense does not apply

when possession continues after the imminent danger of death or

serious bodily harm has passed).

 Given that appellant's justification defense was

fatally deficient, as a matter of law, without regard to whether

the roles of George Sacco and Deirdre Machado were real or

concocted, the government's closing argument affected no

substantial right.7 See, e.g., Rodriguez-Estrada, 877 F.2d at
 

159 (although prosecutor called defendant a liar and crook, error

held "harmless" in light of overwhelming evidence of guilt);

United States v. Doe, 860 F.2d 488, 494-95 (1st Cir. 1988), cert.
 

 

 7See United States v. Mitchell, 725 F.2d 832, 837 (2d Cir.
 
1983) (court gave the defendant "an opportunity to be acquitted
on the basis of a defense to which he was not entitled").

 11

denied, 490 U.S. 1049 (1989) (unwarranted comments by prosecutor
 

ruled "harmless" in light of overwhelming evidence of guilt).8

Thus, we have the utmost confidence that any alleged

prosecutorial misconduct did not affect the outcome of the trial.

 Although appellant did not have a perfect trial, he

most assuredly received a fair one, see United States v. Hodge-
 

Balwing, 952 F.2d 607, 611 (1st Cir. 1991), and is not entitled
 

to a new one. See Fed. R. Crim. P. 52(b) (no "plain error"
 

unless it "affect[s] substantial rights").

 Affirmed.
 

 

 8Finally, the prosecutor's statements were not so egregious
as to warrant ordering a new trial as a deterrent to future mis-
conduct. See, e.g., Quesada-Bonilla, 952 F.2d at 602 (court may
 
grant new trial to deter future prosecutorial misconduct). The
Supreme Court has cautioned against reversals for harmless error.
United States v. Hasting, 461 U.S. 499, 505-07 (1983) (exercise
 
of supervisory power to reverse conviction as deterrent held
unnecessary where error was harmless). Moreover, we are aware of
nothing which would indicate that these improprieties were
anything other than an isolated instance which will not be
repeated. See United States v. Dworken, 855 F.2d 12, 32 (1st
 
Cir. 1988) (we will not order a new trial simply to deter
misconduct in circumstances where we are confident the misconduct
will not be repeated).

 12