UNITED STATES, Appellee,

v.

Saver HODGE–BALWING a/k/a Balwin Hodge, Defendant, Appellant.

No. 91–1508.

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1991.

Decided Dec. 30, 1991.

Ardin Teron, Hato Rey, P.R., for defendant, appellant.

Jose A. Quiles–Espinira, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., and Ernesto Hernandez–Milan, Asst. U.S. Atty., Hato Rey, P.R., were on brief, for appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BOWNES, Senior Circuit Judge.

This appeal arises from the arrest of the defendant/appellant, Baldwin Farver Hodge, at the Luis Muñoz Marín Airport in Puerto Rico. A jury trial convicted Hodge for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a), importation of cocaine, in violation of 21 U.S.C. § 952(a), and failure to register the cocaine on the cargo manifest or supply list of the aircraft, in violation of 21 U.S.C. § 955.

On appeal, Hodge raises five issues that are actually three. He, in essence, alleges that (1) the prosecutor violated discovery rules; (2) the prosecutor's closing argument resulted in prejudice to the defendant; and (3) the above improprieties resulted in the violation of his due process rights to a fair trial. We affirm his convictions.

## BACKGROUND

Hodge was en route from Trinidad to New York when his plane, American Airlines Flight 755, made a scheduled stop in San Juan, Puerto Rico on December 3, 1990. After disembarking from the aircraft, instead of walking toward the secondary inspection area, Hodge went in the other direction. His behavior drew the attention of a United States Customs official, Enrique Carbonell, who stopped and questioned him. Carbonell conducted a search of Hodge's suitcase and found six boxes of Breeze brand detergent. He asked Hodge why he was carrying so many detergent boxes and Hodge answered that he was allergic to other detergents. Upon inspection of one of the boxes, Carbonell found a plastic bag with white powder in it. A sample of the white powder was field tested which indicated that it was cocaine.

Approximately 1,994 grams (gross weight) of cocaine were found in the boxes. A forensic chemist of the U.S. Customs Service analyzed the substance on December 7, 1990 and found a purity of 90% cocaine hydrochloride. Hodge was indicted on December 3, 1990.

## DISCOVERY VIOLATIONS

Hodge contends that the district court committed reversible error by allowing the prosecutor to question Carbonell about Hodge's allergy statement. He argues that the prosecutor violated rule 16 [1] of the

---

**1.** Rule 16 provides in pertinent part:
Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: . . . the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then

Federal Rules of Criminal Procedure in failing to disclose that Carbonell would testify as to what Hodge told him when asked why he had so many boxes of detergent. He further argues that the prosecutor's failure to disclose the evidence violated his due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The parties had open file pretrial discovery. During the prosecutor's opening statement, he stated that Carbonell's testimony would include his questioning of Hodge regarding the detergent boxes. The prosecutor said, "When questioned as to why he was carrying six boxes of detergent, the defendant answered that he was allergic to other types of detergent and that he bought all those six boxes in order to wash his clothes." The defense objected to this comment on the grounds that the prosecutor was commenting on the silence of the defendant and that the prosecutor had not provided the defense with "any statement from the defendant and that's a substantial error." The prosecutor countered that the statement at issue was not discoverable but, in any event, it was in a case report. After defense counsel stated that it had not been given the case report, the court ordered the prosecutor to provide defense counsel with a copy of it. Defendant did not move for a continuance. Later that same day, Carbonell testified, under both direct and cross-examination, of questioning Hodge on the detergent boxes and Hodge's response.

 We review discovery violations under an abuse of discretion standard and not the harmless error standard, as suggested by both parties. *See United States v. Tejada,* 886 F.2d 483, 486 (1st Cir.1989); *United States v. Samalot Perez,* 767 F.2d 1, 4 (1st Cir.1985). We fail to see how the trial court abused its discretion in admitting Carbonell's testimony into evidence; it

ordered the prosecution to hand over the case report to defendant. Hodge has failed to bear his burden of demonstrating how he was prejudiced by the late delivery of the case report containing Hodge's statement. Indeed, Hodge failed to ask for a continuance once specific information about Carbonell's testimony was revealed during the prosecutor's opening statement.

 We find that Hodge's due process argument is without merit. The Supreme Court in *Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. at 1196–97, held that suppression by the prosecution of evidence *favorable* to the accused who has requested it violates due process where the evidence is material either to guilt or to punishment. *See also United States v. Peters,* 732 F.2d 1004, 1008 (1st Cir.1984) (finding that prosecutorial delay in handing over discoverable material does not violate *Brady* requirements). Hodge fails to explain how the evidence in question constitutes exculpatory evidence.

Hodge raises a second discovery error. He contends that the testimony of Dr. Prieto, the contract doctor for the United States Marshal Service, should have been excluded. Dr. Prieto testified that he conducted a physical examination of Hodge and that, "According to my records as the information given by the patient, there is no known drug allergies." Defendant objected on the grounds that the testimony was irrelevant and also violative of the physician/patient privilege. The court overruled both objections. Hodge does not raise these objections on appeal.

 On appeal, Hodge argues for the first time that the court erred in permitting the government to introduce Dr. Prieto's testimony because it violated Fed.R.Crim.P. 16(a)(1)(D).[2] In general, error may not be predicated upon the court's rulings admit-

known to the defendant to be a government agent.
Fed.R.Crim.P. 16(a)(1)(A) (1991 rev.ed.).

**2.** Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which

are within the possession, custody, or control of the government, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.
Fed.R.Crim.P. 16(a)(1)(D).

ting or excluding evidence unless the defendant preserves his rights. *See United States v. Griffin,* 818 F.2d 97, 99 (1st Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). We can only conduct a plain error review. *Id.* at 100.

■ The court admitted Dr. Prieto's testimony on the ground that it was relevant to confirm that Hodge was lying when he told Carbonell that he was allergic to detergents other than Breeze. On this record, we cannot say that this is one of those "exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice." *Id.* (quoting *Nimrod v. Sylvester,* 369 F.2d 870, 873 (1st Cir.1966)). We conclude that plain error is plainly absent.

Similarly, as explained above, Hodge's contention that Dr. Prieto's testimony violated *Brady v. Maryland* requirements is without merit. Hodge contends that his statement to Dr. Prieto was a "compelled statement obtained by official government medical authorities." Because Hodge failed to raise this claim at trial, we would review the claim under the plain error standard. We find, however, that there is no record support for the contention that any information Hodge provided to Dr. Prieto was compelled. In any event, there was no plain error.

### PROSECUTION'S CLOSING ARGUMENT

■ Hodge raises several claims on appeal as to prosecutorial misconduct in the closing argument. He has preserved for appeal, however, only the objection to the prosecutor's reference to Hodge's silence. The defense objected to the following part of the prosecutor's closing argument:

> But let's get to the—to the case. Why was the defendant so nervous when Carbonell saw him for the first time? You remember that Carbonell told you that he was trying to—he was going to the opposite direction where he was supposed to go. Why was he so nervous? Why was he going to the opposite direction? You can infer from that, and that's not doing the Government's job; that's not doing the prosecutor's job.

> That's part of the deliberation process, and the Court will instruct you as to that.

> You can infer from that—from that evidence that he was nervous because he knew he was carrying cocaine and he saw the Custom inspector waiting for him there and he knew that in order to enter the United States he has to go through Customs and that he was in jeopardy of being arrested, as he was for our luck. And that the moment that the agent detected those six boxes, the agent told him, why are you carrying so many detergent boxes? And he answered, because I am allergic to other detergents.

> He was arrested on December the 3rd, and he was taken care of by Dr. Prieto who you heard today, and Dr. Prieto told you that in his medical history at the penitentiary there is nothing about any type of allergies in relation to the defendant, and the Breeze detergent has been under the custody of the agent since December the 3rd.

> But what is important about that comment, I am allergic, that's why I have six boxes of detergent? He never told the agent at that moment, that's not mine; that was put there. He said, I am allergic. He wasn't surprised with the detergents in his suitcase. He knew they were there. That's why the evidence shows that he's guilty; that he's guilty as charged.

We have fashioned a three prong test in examining whether the prosecution's misconduct "so poisoned the well" that the trial's outcome was likely affected. *See United States v. Capone,* 683 F.2d 582, 586–87 (1st Cir.1982). We examine (1) whether the prosecutor's conduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether it is likely that any prejudice surviving the judge's instruction could have affected the outcome of the case. *Id. See also Mateos–Sanchez,* 864 F.2d 232, 241 (1st Cir. 1988).

The record shows that the court gave curative instructions to the jury:

THE COURT: Very well. Ladies and gentlemen of the jury, I'm going to give you what we call a curative instruction. At some point in time the Assistant U.S. Attorney, when he was referring to that area about the defendant being interviewed about the boxes of detergent and that the—Mr. Hernandez says why didn't he say that that's not mine, et cetera, I want to tell you very emphatically that the law does not compel a defendant to testify on his behalf and that no comment on the defendant's silence may be made and no inference then—I'm charging you that no inference from that may be made.

We find that the court properly accounted for possible prejudice and no reversible error was committed.

 As for the other claims of prosecutorial misconduct that Hodge raises on appeal, defense counsel failed to object to them during trial. Hodge now claims that the prosecutor in his closing argument made improper references to willful blindness of the part of Hodge; vouched for its witness, customs inspector Carbonell; and injected his personal feelings as to Hodge's confinement. As explained before, our only review is for plain error. "Under this standard, we review only 'blockbusters: those errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below.'" *United States v. Olivo–Infante,* 938 F.2d 1406, 1412 (1st Cir.1991) (quoting *United States v. Griffin,* 818 F.2d at 100). Accordingly, we evaluate Hodge's procedurally defaulted claims against the entire record in order to determine whether the plain error standard has been met.

The prosecutor strayed beyond the permissible evidentiary borders in his remarks on closing. But we are unable to conclude, based on the record, that these prosecutorial improprieties are "'particularly egregious errors' ... that 'seriously affect that fairness, integrity or public reputation of judicial proceedings.'" *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584,

1592, 71 L.Ed.2d 816 (1982)). We find that while Hodge may not have had a perfect trial, it was a fair trial. There was no denial of due process.

Affirmed.