**UNITED STATES of America, Appellee,**

v.

**Joseph SMITH, Defendant, Appellant.**

**No. 92–1612.**

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1992.

Decided Jan. 5, 1993.

---

Ernest Barone, Providence, RI, for appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Lawrence D. Gaynor, Asst. U.S. Atty., Providence, RI, were on brief, for appellee.

Before SELYA, CYR and BOUDIN, Circuit Judges.

CYR, Circuit Judge.

Defendant Joseph Smith appeals his conviction for possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), claiming that the government's closing argument deprived him of a fair trial. We affirm.

## I

### BACKGROUND

The following facts are undisputed. On August 4, 1991, Patrolman Robert Brown, Jr., responded to a reported disturbance at the Hot Club in Providence, Rhode Island. After assisting in resolving the dispute, Officer Brown was told by a patron that another disturbance had broken out between two men in a nearby parking lot. As Brown approached the parking lot, a woman standing near him screamed: "That man has a gun!" In the direction indicated by the woman, the officer saw appellant Smith standing alone, and other people running away from Smith.

The officer approached appellant and told him to drop the gun. Smith held out his palms, which were empty, and said, "I ain't got no gun," then turned and ran. Officer Brown gave chase and radioed for assistance. Following a two-to-three minute chase, covering one-quarter to one-half mile, Smith was apprehended; an unloaded .25 caliber automatic handgun was removed from his waistband. Appellant's sole defense at trial was that his possession of the firearm was justified in the circumstances.

According to his own testimony, appellant had been standing outside the club when another man said to him: "Hey Joe, I've got your f'ing girlfriend." Turning around, appellant saw a man, whom he identified as George Sacco, restraining appellant's girlfriend, Deirdre Machado, and holding a gun to her side. Appellant testified that he approached Sacco, who tripped, and, after they scuffled, appellant grabbed the gun from Sacco. Appellant testified that it was Machado who yelled: "That man has a gun," and that Machado had meant that Sacco had a gun. Appellant admitted at trial that he had denied having a gun when asked by Officer Brown, and had started to run. Deirdre Machado essentially corroborated appellant's version of the events. Officer Brown, on the other hand, testified that he was acquainted with Machado and that she was not the woman who had yelled to him that night.

## II

### DISCUSSION

■ Appellant claims that the government's closing argument deprived him of a fair trial by disparaging the credibility of the witnesses for the defense and infringing upon the fact-finding function reserved to the jury. As there was no objection at trial, we review for plain error, *United States v. Grant*, 971 F.2d 799, 810 (1st Cir.1992) (en banc); *United States v. Nickens*, 955 F.2d 112, 120 (1st Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 108, 121 L.Ed.2d 66 (1992), which means we must evaluate the prosecutor's statements in light of the entire record, *Grant*, 971 F.2d at 810, and may overturn the jury verdict only if the government's closing argument "so poisoned the well" that it is likely that the verdict was affected. *United States v. Mejia–Lozano*, 829 F.2d 268, 274 (1st Cir. 1987); *United States v. Panet–Collazo*, 960 F.2d 256, 260 (1st Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 220, 121

L.Ed.2d 158 (1992). We discern no plain error.

According to appellant, the prosecutor's statements in closing argument—that Sacco did not exist, appellant and Machado were lying, and appellant was guilty—improperly implied that the prosecutor possessed knowledge beyond the purview of the evidence and improperly invoked the authority of his office to bolster his interpretation of the evidence. The crux of appellant's claim is that his and Machado's testimony concerning George Sacco's role was uncontradicted and, therefore, there was no *evidence* on which to predicate the prosecutor's contention that he and Machado were lying; accordingly, were the jury to credit their testimony, there was sufficient evidence to acquit on the *justification* defense.

■ Although it is plainly improper for a prosecutor to imply reliance on knowledge or evidence not available to the jury, *United States v. Cain,* 544 F.2d 1113, 1116 (1st Cir.1976); *Patriarca v. United States,* 402 F.2d 314, 321 (1st Cir.1968), *cert. denied,* 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969), there was no such intimation in this case. Rather, considered in the context of the closing argument as a whole, the comments cited by appellant—that there was no Sacco and that Machado belatedly concocted the story to prevent appellant from being convicted—suggested inferences the jury might draw from the evidence,[1] a proper subject of comment by the prosecutor. The government may attempt to persuade the jury to draw suggested inferences unfavorable to the defense, as long as the prosecutor's *own opinion* as to the witness' credibility is not urged on the jury. *See, e.g., United States v. Mount,* 896 F.2d 612, 625 (1st Cir.1990).

During closing argument, the prosecutor reminded the jury that Officer Brown had testified that—at the time the unidentified woman screamed: "That man has a gun!"—Brown saw no one else near the scene, except appellant and other persons running *from appellant.* The prosecutor further reminded the jury that Officer Brown had testified that the unidentified woman was not Deirdre Machado. Finally, the prosecutor noted that Machado admitted at trial that she had never before told the police, or anyone else, about being restrained at gunpoint by Sacco, even though she was appellant's friend and believed he was being charged with a crime that had been prompted by his desire to protect her from Sacco.

■ Although the phrasing of the prosecutor's argument left something to be desired, it was not improper to urge the jury to evaluate the plausibility of the justification defense in light of the other evidence (and the lack thereof), as well as the motivations and biases of the defense witnesses, including appellant. *See United States v. Savarese,* 649 F.2d 83, 87 (1st Cir.1981) (defendant "had no right to expect the government to refrain from commenting on the quality of his ... witnesses or from attacking the weak evidentiary foundation on which the [defense] rested"); *Mount,* 896 F.2d at 626 (not improper for government to argue that its interpretation of the evidence was more persuasive); *United States v. Glantz,* 810 F.2d 316, 321 (1st Cir.), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987) (government is entitled to comment on plausibility of defense theory). Nevertheless, the government's closing unnecessarily risked the impression that the prosecutor was vouching, either personally or on the strength of other extraneous considerations, that George Sacco did not exist, rather than merely

---

**1.** These comments were as follows:

This business about Sacco is a complete fabrication. *That's what the evidence shows.*
. . . .
Does that sound like someone who's worthy of belief to you? Of course not. She [Machado] never did those things, ladies and gentlemen. She never filed a complaint against Sacco because Sacco never did anything.

There was no Sacco. It's a convenient story. It's a complete fabrication. She never tried to help him out [by filing a complaint] because he's guilty. He didn't do anything to disarm Sacco and save her. That's a lot of nonsense.
There was no George Sacco anyplace because George Sacco wasn't there.
(Emphasis added.)

urging the *jury* to so conclude on the basis of the *evidence*. *See, e.g., United States v. Turner,* 892 F.2d 11, 14 (1st Cir.1989) ("[i]t is the jury's responsibility to evaluate the credibility of the evidence presented"). Similarly, the prosecutor's repeated statements that the defendant was guilty verged on the exclusive province of the jury to determine guilt. Of course, any representation as to the prosecutor's personal belief in the guilt of an accused is improper. *Nickens,* 955 F.2d at 121; *Mejia–Lozano,* 829 F.2d at 273.[2] The means to eliminate even an appearance of over-reaching were at hand; the prosecutor need simply have predicated these entreaties *explicitly* and *exclusively* on reasonable inferences yielded by the evidence. *See Cain,* 544 F.2d at 1116 (prosecutor's argument that accused is guilty is not improper, provided it calls for the jury's assessment of the evidence and is not presented as the personal opinion of the prosecutor).[3]

A new trial is unwarranted so long as we are able to conclude with a high degree of confidence that the alleged prosecutorial misconduct did not affect the outcome of the trial. *Mejia–Lozano,* 829 F.2d at 274; *Panet–Collazo,* 960 F.2d at 260. The strength of the case against the defendant often is the most significant factor to be balanced against the prosecutorial misconduct. *United States v. Boldt,* 929 F.2d 35, 41 (1st Cir.1991); *Rodriguez–Estrada,* 877 F.2d at 159. We therefore examine the evidence, and other relevant factors, to determine whether the alleged prosecutorial misconduct warranted a new trial.

The prejudice from the errant statements in the prosecutor's closing argument was mitigated somewhat by their context and ambiguity. *See Grant,* 971 F.2d at 810. *Cf. United States v. Ingraldi,* 793 F.2d 408, 416 (1st Cir.1986) (among factors for determining whether new trial is warranted is "the severity of the misconduct"); *United States v. Brown,* 938 F.2d 1482, 1489 (1st Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 611, 116 L.Ed.2d 633 (1991) (same). Although their ambiguity perhaps *risked* jury confusion as to its role as the sole arbiter of guilt and finder of the facts, the prosecutor's contentions that appellant's justification defense had been concocted and that he was guilty were in no sense objectionable as mischaracterizations of the evidence, but because they were too loosely *linked* to the evidence, hence may have conveyed the personal opinion of the prosecutor. *Cf. United States v. Farnkoff,* 535 F.2d 661, 668 (1st Cir.1976) (the fact that the prosecutor made clear that the jury should arrive at its verdict, based on the evidence, mitigated the effect of statement

---

**2.** The government concedes that the prosecutor, on at least one other occasion, implied a personal belief in appellant's guilt. The prosecutor stated:

> *I think* when you look at the evidence in this case and use your common sense, there's only one conclusion you can reach and that is that this defendant Joseph Smith has been proved guilty beyond a reasonable doubt.

(Emphasis added.) The prosecutor's statement could have been purged and converted into permissible argument by a simple rephrasing: "The government submits ..."

Another statement by the prosecutor—that even if appellant's story were believed he was "still guilty" because he had not established a justification defense—permissibly urged a reasonable inference based directly and exclusively on the evidence. *See infra* at pp. 685–86.

**3.** Recognizing its special obligation to see that justice is done and to refrain from improper methods in seeking a conviction, *see United States v. Quesada–Bonilla,* 952 F.2d 597, 602 (1st Cir.1991); *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), the government forthrightly concedes improprieties in certain other statements made in its closing argument.

It concedes that it impermissibly used pejorative language in repeatedly characterizing the testimony of appellant and Machado as lies. *See United States v. Rodriguez–Estrada,* 877 F.2d 153, 159 (1st Cir.1989) ("prosecutor's obligation to desist from the use of pejorative language ... is every bit as solemn as his obligation to attempt to bring the guilty to account"); *cf. Nickens,* 955 F.2d at 121 ("[i]t is ... inappropriate for a prosecutor to call defendant a liar"). The prosecutor characterized their testimony as "a lie," "one tall tale," and "a complete fabrication." The government concedes as well that it was improper for the prosecutor to state that he "welcomed" the burden of proof in this case. *See United States v. Flaherty,* 668 F.2d 566, 597 (1st Cir.1981) (statement told jury "of the Government's confidence that the evidence would show guilt beyond a reasonable doubt").

that defendant was guilty).[4] Absent any suggestion of superior knowledge or personal opinion on the part of the prosecutor, similar argumentation has been found not to be improper. *See United States v. Garcia,* 818 F.2d 136, 143–44 (1st Cir.1987) ("Although we think a prosecutor would be well advised to avoid directly accusing a defendant of lying—since jurors could believe the government has knowledge outside the evidence about the defendant's veracity—we are confident that the statements in this case would have been perceived only as commentary on the implausibility of the defendant's story."). Nor did the overzealous statement that the prosecutor "welcome[d]" the burden of proof constitute reversible error, as its context did not suggest that the prosecutor's confidence was founded on knowledge or evidence unavailable to the jury.[5] *See Flaherty,* 668 F.2d at 597. Viewed in context, these ambiguous statements were not "so egregious that [they] 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *Nickens,* 955 F.2d at 121 (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)).[6]

Even more importantly, however, the prosecutor's statements must be considered harmless error in view of the *uncontested* evidence against appellant. The *entire* defense was that appellant's possession of the firearm was justified. Among the essential elements of a justification defense, *see, e.g., United States v. Lemon,* 824 F.2d 763, 765 (9th Cir.1987) (defining four elements); *United States v. Gant,* 691

F.2d 1159, 1162–63 (5th Cir.1982) (same), is the "requirement that the defendant have no alternative to possession of the firearm [and] that the defendant get rid of the firearm as soon as a safe opportunity arises." *United States v. Singleton,* 902 F.2d 471, 473 (6th Cir.), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990).

The jury's rejection of the justification defense did not depend on their discounting, in *any* measure whatever, either Machado's or appellant's testimony about Sacco's involvement. Appellant took the stand and admitted that he had denied having a firearm when asked by Officer Brown, then fled with the firearm still in his possession. There was no contention that appellant believed he was in any physical danger *from Officer Brown,* but only from Sacco. Thus, even assuming appellant's possession of the firearm was justified at the outset, his refusal to surrender it at the request of a police officer from whom he did not fear bodily harm (as distinguished from arrest for illegal possession), rendered the justification defense unsupportable under any view of the evidence. *See United States v. Stover,* 822 F.2d 48, 50 (8th Cir.1987) (justification defense does not apply when possession continues after the imminent danger of death or serious bodily harm has passed).

Given that appellant's justification defense was fatally deficient, as a matter of law, without regard to whether the roles of George Sacco and Deirdre Machado were real or concocted, the government's closing argument affected no substantial right.[7]

**4.** The court firmly advised the jury in its opening instructions as follows:

> [Y]ou are the judges of the facts. You have to decide what actually happened in this case. You and you alone make that decision. No one, simply no one can trespass on that very specialized unique area that is exclusively yours ...

In its final jury charge, the court reiterated: "Remember, I told you that you are the sole judges of the facts. You alone decide the facts ... You are the sole judges of the facts."

Contemporaneous curative instructions were not given, as none were requested. In its opening jury instructions, however, the district court informed the jury that the statements of counsel

are not evidence. In its final charge, given the same day as its opening instructions, the court reminded the jury that the evidence was limited to the testimony of the witnesses and the exhibits admitted by the court.

**5.** The statement was as follows: "[T]he government has the burden of proof in this case and I welcome that burden, ladies and gentlemen, because in this case we have proven the defendant guilty beyond a reasonable doubt."

**6.** *See also supra* note 4.

**7.** *See United States v. Mitchell,* 725 F.2d 832, 837 (2d Cir.1983) (court gave the defendant "an op-

*See, e.g., Rodriguez–Estrada,* 877 F.2d at 159 (although prosecutor called defendant a liar and crook, error held "harmless" in light of overwhelming evidence of guilt); *United States v. Doe,* 860 F.2d 488, 494–95 (1st Cir.1988), *cert. denied,* 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 430 (1989) (unwarranted comments by prosecutor ruled "harmless" in light of overwhelming evidence of guilt).[8] Thus, we have the utmost confidence that any alleged prosecutorial misconduct did not affect the outcome of the trial.

Although appellant did not have a perfect trial, he most assuredly received a fair one, *see United States v. Hodge–Balwing,* 952 F.2d 607, 611 (1st Cir.1991), and is not entitled to a new one. *See* Fed.R.Crim.P. 52(b) (no "plain error" unless it "affect[s] substantial rights").

*Affirmed.*

portunity to be acquitted on the basis of a defense to which he was not entitled").

**8.** Finally, the prosecutor's statements were not so egregious as to warrant ordering a new trial as a deterrent to future misconduct. *See, e.g., Quesada–Bonilla,* 952 F.2d at 602 (court may grant new trial to deter future prosecutorial misconduct). The Supreme Court has cautioned against reversals for harmless error. *United States v. Hasting,* 461 U.S. 499, 505–07, 103 S.Ct. 1974, 1978–79, 76 L.Ed.2d 96 (1983) (exercise of supervisory power to reverse conviction as deterrent held unnecessary where error was harmless). Moreover, we are aware of nothing which would indicate that these improprieties were anything other than an isolated instance which will not be repeated. *See United States v. Dworken,* 855 F.2d 12, 32 (1st Cir.1988) (we will not order a new trial simply to deter misconduct in circumstances where we are confident the misconduct will not be repeated).