Berthel v. State of NH                    CV-99-533-B    12/04/00

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Glen C. Berthel</u>

     v.                                   Civil No. 99-533-B
                                          Opinion No. 2000DNH255
<u>State of New Hampshire</u>


<u>MEMORANDUM AND ORDER</u>


     Petitioner Glen Berthel, <u>pro</u> <u>se</u>, is currently serving an

eighteen-year to life sentence in the New Hampshire State Prison

for second degree murder.  He has petitioned this Court for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that

his trial counsel were ineffective.

     Berthel's primary arguments are that his trial counsel:

(1) improperly introduced the results of a blood alcohol test at

trial showing that he had a blood alcohol level of approximately

.14 percent; (2) failed to inform the jury that an apple tree

identified to the jury during the view was missing branches that

would have prevented two of the state's witnesses from making

certain observations they claimed to have made shortly before the

murder; and (3) failed to object to certain statements made by the prosecutor during his closing argument.

Presently before me is the State of New Hampshire's motion for summary judgment (Doc. no. 11). For the following reasons, I grant the State's motion.

## I. BACKGROUND[1]

On the morning of June 18, 1994, Berthel injured his back while helping his parents-in-law install a window. After leaving his parents-in-law's home, Berthel and his wife went to the Joliette Snowshoe Club, a private drinking establishment in Berlin. They arrived at the Club at around 2:30 p.m. Berthel intended to have a few drinks to help him relax and to ease his back pain. Berthel consumed four beers and a shot of rum at the Club. Eddie McDonald joined the Berthels at their table at the Club and invited them to a cookout at his apartment.

Shortly thereafter, the Berthels left the Club and went to Eddie McDonald's cookout where Berthel drank another beer. Steve McDonald, the victim, arrived at the cookout wearing sexually

---

[1] I take the facts from the parties' briefs and the transcript of the trial.

suggestive attire. Berthel told McDonald that his attire was not appropriate because there were women and children at the party. In response, McDonald attacked Berthel, hitting him in the head repeatedly. After the initial fight, McDonald engaged in two more unprovoked physical attacks on Berthel.

Eddie McDonald ordered Berthel and Steve McDonald to leave the apartment. Berthel and his wife left the house and walked down the street to an adjacent parking lot where their car was parked. Because of his back injury, Berthel felt severe pain and shortness of breath. Therefore, he stood at his car trying to catch his breath. Berthel testified that he also watched Steve McDonald, who was still standing in front of the house, to keep an eye on him. After at least ten minutes had passed, McDonald came running toward Berthel yelling angrily. McDonald attacked Berthel when he reached the car, and Berthel retrieved a knife from his car and stabbed him, allegedly in self-defense. McDonald died a short time later. A blood alcohol test performed as part of the autopsy established that McDonald had a blood alcohol level of .25 percent, more than three times the legal limit for drivers.

Berlin Police Corporal Supry arrived at the scene at about 5:40 p.m. Supry observed that most of the people at the scene of the crime were intoxicated, including Berthel. He arrested Berthel shortly after his arrival. A blood alcohol test revealed that Berthel's blood alcohol level was approximately .14 percent.

Berthel stood trial in the Coos County Superior Court from April 11, 1995 to April 19, 1995, on alternative counts of knowing second degree murder and reckless second degree murder. Berthel's defense at trial was that he acted in self-defense. The jury convicted him of the reckless murder charge and acquitted him of the knowing murder charge. The New Hampshire Supreme Court summarily affirmed his conviction on December 20, 1996.

After unsuccessfully appealing his conviction, Berthel filed a pro se motion for a new trial in February 1998, raising the same three claims of ineffective assistance of counsel that he raises in this action. The trial court denied the motion. Berthel filed a motion to reconsider, and the trial court denied that motion, too. On May 18, 1998, Berthel filed a notice of appeal with the New Hampshire Supreme Court, which denied the

appeal.  Berthel filed a motion to reconsider, and that motion
was also denied on March 26, 1999.  Berthel then filed the
instant petition.

## II. <u>STANDARD OF REVIEW</u>

In a habeas corpus proceeding, as in all civil actions,
summary judgment is appropriate only "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  A genuine issue is one "that properly can be resolved
only by a finder of fact because [it] . . . may reasonably be
resolved in favor of either party."  <u>Anderson v. Liberty Lobby,
Inc.</u>, 477 U.S. 242, 250 (1986).  A material fact is one that
affects the outcome of the suit.  <u>See</u> <u>id.</u> at 248.

In ruling on a motion for summary judgment, the court must
construe the evidence in the light most favorable to the
non-movant.  <u>See</u> <u>Oliver v. Digital Equip. Corp.</u>, 846 F.2d 103,
105 (1st Cir. 1988).  The party moving for summary judgment,
however, "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record]...which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323).

I apply these standards in ruling on the State's motion for summary judgment.


## III.  DISCUSSION

To prevail on an ineffective assistance of counsel claim, a petitioner must make a two-part showing. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994).  First, he must establish that counsel's conduct was deficient, meaning that it was unreasonable under prevailing professional norms. See Strickland, 466 U.S. at 688-90.  This standard is difficult to meet because reviewing courts

begin with the presumption "that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks and citation omitted). A petitioner must overcome this deferential presumption in order to meet the first part of the test. See id.

Second, a petitioner must show that counsel's asserted deficiencies resulted in actual prejudice. See Strickland, 466 U.S. at 687; Scarpa, 38 F.3d at 8. In other words, he must show that there is a reasonable probability that, but for counsel's conduct, the trial outcome would have been different. See Strickland, 466 U.S. at 694; Scarpa, 38 F.3d at 8-9. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In reviewing an ineffective assistance of counsel claim, the court need not address both parts of the test if a petitioner cannot make a sufficient showing on one. See id. at 697. Therefore, I can determine whether a petitioner suffered prejudice as a result of counsel's conduct without first examining whether counsel's performance was deficient. See id.

A.    **Admission of the Blood Alcohol Test**

Berthel argues that his trial counsel were ineffective

because they introduced the results of a blood alcohol test showing that he was intoxicated.  Presumably, Berthel believes that this decision prejudiced his case because it may have caused the jury to conclude that he was guilty in part because he was intoxicated when he stabbed McDonald.

I reject Berthel's argument because his attorneys' decision to introduce the results of the blood alcohol test was a legitimate tactical judgment designed to bolster his self-defense claim.  Berthel's defense strategy was to establish a reasonable doubt in the jurors' minds about whether McDonald was so out of control when he attacked Berthel that he reasonably caused Berthel to believe that his life was in danger.  Toward that end, it benefitted Berthel to demonstrate that McDonald had a blood alcohol level of more than three times the legal limit for drivers when he was killed.  It also was reasonable for counsel to place McDonald's blood alcohol level in its appropriate context by allowing the jury to learn that Berthel's blood alcohol level was significantly lower than McDonald's.  If counsel had failed to introduce the results of Berthel's blood alcohol level, given the other evidence that Berthel had been drinking and was intoxicated, the jury might have mistakenly

concluded that McDonald was no more intoxicated than Berthel. Counsel's decision to introduce the results of the blood alcohol test thus represents a legitimate tactical choice that cannot serve as the basis for an ineffective assistance of counsel claim.[2]

## B. The Apple Tree

Two of the state's witnesses testified concerning observations that they made of Berthel shortly before the stabbing. Linda Cantu testified that she was standing in the vicinity of Eddie McDonald's porch when she saw Berthel leaning up against the passenger side of his car staring at Steve McDonald. (Tr.[3] Day 1 at 120-22.) According to Cantu, Berthel

---

[2] Berthel also argues that his lawyers were ineffective both because they failed to challenge the chain of custody for the blood sample and because they failed to object to the trial court's instruction that voluntary intoxication is not a defense to a charge of reckless second-degree murder. These arguments are easily addressed. First, counsel's failure to challenge the chain of custody for the blood sample was not improper because counsel made a legitimate tactical judgment that the blood alcohol test results would benefit Berthel. Second, defense counsel did not err in failing to object to the court's instruction on voluntary intoxication because that instruction is a correct statement of law. See State v. DuField, 131 N.H. 35, 37-39 (1988) (holding that voluntary intoxication is not a defense to reckless second-degree murder).

[3] "Tr." refers to the transcript of the jury trial.

"had a smiling beckoning - I don't know the proper word to use. Like he wanted Steve to go back there." (Id.) Another witness, Clint Moholland, testified that he was in the same general area as Cantu and also noticed that Berthel was "staring Steve down constantly." (Tr. Day 2 at 71.) Berthel concedes that he was leaning up against his car for approximately 10 minutes prior to the stabbing and that at times he was looking at McDonald, who was also on the porch, because he "needed to keep an eye on him." (Tr. Day 5 at 57.) He denied, however, that he did anything to antagonize McDonald. (Id.)

There is an apple tree in the general area between the spot where Berthel was leaning against his car and the porch where Cantu, Moholland, and McDonald were standing. During the view, defense counsel reminded the jury that the apple tree would have been full of leaves when the stabbing occurred. Berthel contends, however, that counsel should also have told the jury that several branches had been removed from the tree between the date of the stabbing and the date of the view because it would have cast doubt on Cantu's and Moholland's testimony that they were able to observe his face from the porch.

I reject this argument.  Counsel would not have been permitted to testify at the view that branches had been removed from the apple tree.  At most, he could have informed the jury that he expected that testimony would be offered at trial to that effect.  Presumably, Berthel would then have had to testify that the branches had been removed and that they would have obstructed Cantu's and Moholland's view.

Counsel obviously made the correct tactical choice in deciding not to elicit testimony from Berthel concerning the missing branches.  Both Cantu and Moholland testified with certainty and accuracy about the location of Berthel's car, his position next to the car, his posture, the direction he was facing and the location of other observers.  (Tr. Day 1 at 117-18; Day 2 at 67-69.)  Their testimony on these points was consistent with Berthel's own testimony.  (Tr. Day 5 at 56-57.)  Moreover, Berthel testified that he was able to "keep an eye" on McDonald while Berthel was leaning up against his car and McDonald was standing on the porch.  (Id. at 57.)  Since Berthel claimed that he was able to see McDonald standing on the porch, it is unlikely that the jury would have accepted his claim that the missing branches prevented Cantu and Moholland from seeing

-11-

him while they were standing on the same porch.  This is especially true because neither Cantu nor Moholland could be pinned down as to precisely where they were standing on the porch when they made their observations of McDonald.  Under these circumstances, counsel's decision not to pursue the issue of the missing branches qualifies as a reasonable tactical judgment that cannot support an ineffective assistance of counsel claim.  See United States v. Walters, 904 F.2d 765, 772 (1st Cir. 1990) (holding that counsel's failure to cross-examine witness more strenuously or to object could have been the result of a decision "not to proceed down a blind alley" or to avoid emphasizing "the damning evidence against the [defendant]" and was not considered to be ineffective assistance of counsel).[4]

## C.   Prosecutor's Statements During the Closing Argument

Lastly, Berthel claims that defense counsel were ineffective because they failed to object to several statements made by the prosecutor in his closing argument that allegedly reflected his

_____

[4]   Berthel also complains that counsel failed to note the apple tree's location on the diagram of the scene.  The short answer to this complaint is that counsel identified the apple tree to the jury during the view.  Nothing else was required under the circumstances.

own personal beliefs about the credibility of certain witnesses. Defense counsel's decision as to whether to object during the closing argument was "plainly a tactical choice."  Santiago-Martinez v. United States, 993 F.2d 1530, 1993 WL 192818, at **4 (1st Cir. 1993)(per curiam )(table, text available on Westlaw); see also United States v. Jackson, 918 F.2d 236, 243 (1st Cir. 1990) (holding that defense counsel's failure to object to prosecutor's remark in the opening statement was consistent with a "reasonable tactical decision").  Berthel does not present evidence that warrants a different conclusion in this case.

Furthermore, because I find that the prosecutor's statements fall within the scope of allowable prosecutorial argument, defense counsel's failure to object to them was not deficient conduct.  See Santiago-Martinez, 1993 WL 192818, at **4; State v. Matiyosus, 134 N.H. 686, 688-89 (1991).  While a prosecutor may not include his own opinions about the credibility of witnesses in his closing argument, he may urge the jury to draw suggested inferences.  See United States v. Smith, 982 F.2d 681, 683 (1st Cir. 1993).  The prosecutor may also comment on the plausibility of the defense theory as well as the motivations and biases of defense witnesses, including the defendant when his credibility

-13-

is a key issue.  See id.; United States v. Garcia, 818 F.2d 136, 143 (1st Cir. 1987).

The prosecutor made the first set of challenged statements in a discussion about searching for the truth.  Berthel's contentions apply to the phrases in bold below.

> A criminal trial is about one thing, about one thing only. It's about the truth and it's about finding the truth. That's what we are here for.  And that's why every single witness who comes into the courtroom and sits in that chair looks at you and raises their hand and pledges to you to tell the truth, the whole truth, and nothing but the truth so help them God.  And Mr. Moholland he may not be able to read and he may not live in the nicest house in the nicest section of Berlin, but he put on his best suit.  He carried himself with his cane up those stairs, and he came in and **he told you the truth.  That oath meant something to him.**  The defendant [Berthel] and his wife they took the same oath, ladies and gentlemen.  **I don't think** that you had to listen to them for too long to realize that **the oath didn't mean the same thing to them.**

(Tr. Day 6 at 29-30.)

In the statement about Moholland, the prosecutor suggested to the jury that they could draw the inference that Moholland was telling the truth based on his serious approach to the proceedings.  Although his phrasing left something to be desired, I fail to find that he invoked his personal opinion in this statement.

-14-

As to the second statement, the prosecutor could remark upon the truthfulness of Berthel and his wife, so long as he did not inject his own personal opinion, because their credibility was a central issue in this case. See Santiago-Martinez, 1993 WL 192818, at **3; Matiyosus, 134 N.H. at 688. He tied this remark to the evidence before the jury, demonstrating that portions of the Berthels' testimony were contradicted by other evidence and were implausible. The prosecutor thereby suggested to the jury that they should draw the inference that the Berthels were not telling the truth. Because the context of the statement shows that the prosecutor was commenting on inferences to be drawn from the evidence, his use of the words "I don't think" does not signal that he was trying to inject his personal opinion. See United States v. Patterson, 23 F.3d 1239, 1250-51 (7th Cir. 1994) (holding that a prosecutor that used the phrase "I think" was not stating her personal opinion but rather was commenting on the inferences that the jury could draw from the evidence).

The prosecutor made the third statement during a discussion about Steve McDonald's actions immediately before the stabbing. The prosecutor focused on the difference between the statements Laurie Baillargeon and Susan Berthel gave to the police and their

testimony at trial.

> And finally Steve rose to the bait and sped down the street and started yelling about the defendant's manhood. ... [Berthel] said he was yelling you want a piece of me. I'm going to get a piece of you. I am going to get a piece of you.
> Here's the only point **I think**, ladies and gentleman, where Laurie Baillargeon has **corroborated** with her friend Susan Berthel to throw in just a little extra touch, a little extra icing, I am going to kill you. If a man gets into a fight and he says I want a piece of you is that something that someone is bent on murdering would say? Neither Susan Berthel nor Laurie Baillargeon who were both there mentioned that comment I am going to kill you to the police when they were interviewed about it the first time. Which means either it didn't happen or that it was so insignificant that they didn't-- they didn't think to recall it....
> He comes down and he says I want a piece of you. And then Laurie Baillargeon and Susan Berthel who were together all night that night, some five or six hours later coincidentally appears in both their statements and Steve also said I am going to kill you [sic]. They knew by that time that Steve McDonald was dead.

(Tr. Day 6 at 45-46.)

This third comment was also within the range of allowable prosecutorial argument because it suggested to the jury that they could draw the inference that Laurie Baillargeon and Susan Berthel fabricated the story that Steve McDonald told Glen Berthel that he was going to kill him. See Smith, 982 F.2d at 683 (holding that the prosecutor's statement that the witness and defendant had "concocted" their story was proper because it

-16-

suggested inferences that the jury could draw from the conflicting evidence). The use of "I think" in this statement also did not suggest that this was a personal opinion intended to substitute for the evidence, rather the phrase emphasized that this was an area where the jury could draw inferences from the evidence. See Patterson, 23 F.3d at 1250-51. Because the statements fall within the range of allowable prosecutorial argument, defense counsel's failure to object to the statements was not deficient conduct. See Santiago-Martinez, 1993 WL 192818, at **4; Matiyosus, 134 N.H. at 687-89.

Even if I were to assume that defense counsel erred in failing to object to the prosecutor's statements, I would find that counsel's actions did not prejudice Berthel's defense. First, the court's detailed instructions following the closing arguments most likely cured any prejudice. See United States v. Ortiz, 23 F.3d 21, 26 (1st Cir. 1994) (holding that the trial court's instructions that closing arguments are not evidence neutralized the effects of trial counsel's failure to object to the prosecutor's statements).

In its instructions, the court emphasized that the jury should decide the case by relying solely on the evidence

-17-

presented.  (Tr. Day 6 at 62.)  The court also mentioned that the lawyer's statements are not evidence and should not be used as evidence, and it specifically stated that the "final arguments are not evidence....If the lawyers have stated the evidence differently from how you recall it, then you should follow your own memory of what the evidence was."  (Id. at 63-64.)

The court also instructed the jury that they had to determine the credibility of the witnesses and decide whom they would believe.  (Id. at 66.)  The court followed this instruction with a lengthy discussion of factors to consider in judging a witness's credibility.  (Id. at 66-67.)

Second, the outcome of the trial would not have been different, even if defense counsel had objected to the prosecutor's statements, because the record contains substantial evidence that Berthel did not act in self-defense, the central issue in the case.  Specifically, there was testimony from Cantu and Moholland that Berthel provoked Steve McDonald's final attack, (Tr. Day 1 at 122; Day 2 at 71), and testimony from Berthel that he did not try to retreat from the encounter before using deadly force.  (Tr. Day 5 at 74-77.)  For these reasons,

defense counsel's failure to object to the prosecutor's statements did not prejudice Berthel's defense.

## IV.   CONCLUSION

Because I determine that Berthel's ineffective assistance of counsel claims do not satisfy the <u>Strickland</u> standard even when I construe the record in the light most favorable to Berthel, the State is entitled to judgment as a matter of law.  Therefore, I grant the State's motion for summary judgment (Doc. no. 11).  I direct that the Clerk enter judgment in accordance with this order.

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


December 4, 2000

cc: Glen C. Berthel, <u>pro</u> <u>se</u>
    Ann M. Rice, Esq.