TORRUELLA, Circuit Judge
(Dissenting).
In the trial of Dennis Liriano (“Liri-ano”), the government bore the burden of proving beyond a reasonable doubt that Liriano conspired to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846. A critical fact in the case was thus whether Liriano knew that Xavier Robert’s reference to “candy” actually referred to a controlled substance and not to some other form of contraband. Puzzlingly, however, the government chose not to elicit any testimony about the meaning of the term “candy,” or about code words or street names used to describe either controlled substances generally or BZP pills specifically. Then, in closing argument, the prosecutor urged the jury to infer the meaning of “candy” based on evidence not presented at trial. Finding the prosecutor’s statements at closing argument to be both improper and prejudicial in this case, I believe a new trial is required and I respectfully dissent.
The primary question before the jury, as the prosecutor stated at the beginning of his closing argument, was “whether or not there[ ] [was] sufficient evidence to establish that this Defendant, Dennis Liriano, knew that ‘candy’ meant illegal drugs.” The theory of the defense was that “candy” could have referred to any manner of contraband, and without evidence that Li-riano knew “candy” meant drugs, there was insufficient evidence to convict. Throughout the trial, Liriano’s counsel repeatedly elicited testimony from government witnesses that all manner of contraband is smuggled into the United States via the Akwesasne Indian Reservation, including weapons, counterfeit prescription drugs, counterfeit Rolex watches, and counterfeit credit cards.
In closing argument, the prosecutor first properly argued that it was reasonable to conclude that “candy” did not refer to chocolate. He added that common sense suggested that a phone conversation about a drug deal would likely be “cryptic” and “coded.” The prosecutor then expanded this line of argument in rebuttal, telling the jury:
[Defense counsel] says, you don’t know what the candy is. You don’t know what the candy is. Candy could be gray market goods.... No. Folks, “candy” was a code word. [Defense counsel] says, Look at the transcript. The agent introduced the word “candy.”
Of course I also, please, encourage you, look at that portion of the transcript where the agent says, Tell him you’ve got candy. These are veteran customs agents who have conducted *141 countless numbers of drug investigations. Isn’t it reasonable to infer from the evidence that they know what the buzz words are in the drug trade? Of course it is. It’s only reasonable to conclude this is a phrase used in the drug trade.
Defense counsel took issue with these statements. The government had not previously offered any evidence about the experience of the agent who introduced the word “candy.” The jury had heard nothing regarding the agents’ familiarity with “buzz words” in the drug trade or their understanding of the meaning of “candy.” Accordingly, defense counsel moved for a mistrial on the grounds that these statements introduced new evidence unsupported by the record.
Faced with these facts, the majority appears to miss the thrust of Liriano’s argument by looking at fragments of the prosecutor’s remarks in isolation. As the majority asserts, a comment that “candy” is a code word, considered alone, may indeed be unobjectionable. However, once the prosecutor’s statements are considered together and in context, it becomes clear that the prosecutor asked the jury to infer that the agent who introduced the word “candy” did so because he was a veteran agent who knew from his extensive investigative experience that “candy” was a buzz word used in the drug trade. Given that the government introduced no evidence to support such an inference and instead relied upon information not contained in the record, these statements were improper.[11]
“It is well settled that in its closing argument the prosecution may not rely on knowledge or evidence unavailable to the jury.” United States v. Hamie, 165 F.3d 80, 84 (1st Cir.1999) (internal quotations omitted). While a “prosecutor may attempt to persuade the jury to draw inferences from the evidence,” United States v. O’Shea, 426 F.3d 475, 485 (1st Cir.2005) (internal quotations omitted), these comments may cross the line into misconduct where they “rely on too big an inferential leap.” Hamie, 165 F.3d at 84 (citing United States v. Artus, 591 F.2d 526, 528 (9th Cir.1979) (finding the prosecutor’s statements in closing argument improper because they referenced the authority of Director of Federal Bureau of Prisons when the Director’s powers had not been placed in evidence)); see also United States v. Vargas, 583 F.2d 380, 385 (7th Cir.1978) (“At some point ... the inference asked to be drawn will be unreasonable enough that the suggestion of it cannot be justified as a fair comment on the evidence but instead is more akin to the presentation of wholly new evidence to the jury, which should only be admitted subject to cross-examina *142 tion, to proper instructions and to the rules of evidence.”).
In this case, the prosecutor relied on knowledge and evidence not available to the jury to support the “inferences” he presented in closing argument. Neither Agent Charles nor Robert ever testified at trial. No evidence of Agent Charles’s experience as a customs agent or his rationale for instructing Robert to say “candy” was ever presented to the jury.[12] Additionally, while the government elicited testimony from several agents as to the nature and appearance of BZP and amounts inconsistent with personal use, at no point did any witness discuss the use of any code names for drugs generally, or BZP specifically.[13] From this void, the prosecutor asked the jury to infer that the experience of an agent, about which they had no evidence, allowed that agent to deduce that “candy” was a “buzz word” used in the drug trade, a topic on which they heard no testimony. Considered together and in context, it becomes clear that, with these statements, the prosecutor improperly introduced new evidence to the jury in closing argument.
Finding that the prosecutor’s statements were improper and thus constituted misconduct does not end the analysis, however. “A new trial is unwarranted so long as we are able to conclude with a high degree of confidence that the alleged prosecutorial misconduct did not affect the outcome of the trial.” United States v. Smith, 982 F.2d 681, 684 (1st Cir.1993). The likelihood that prejudice stemming from the improper comments affected the outcome of trial is considered in light of the following factors: “(1) the severity of the prosecutor ]’s misconduct, including whether it was deliberate or accidental; (2) the context in which the misconduct occurred; (3) whether the judge gave curative instructions and the likely effect of such instructions; and (4) the strength of the evidence against the defendants.” United States v. Castro-Davis, 612 F.3d 53, 66 (1st Cir.2010) (quoting United States v. Nelson-Rodríguez, 319 F.3d 12, 38 (1st Cir.2003)).
It is clear that the improper statements in Liriano’s trial were confined to a few sentences in the prosecutor’s rebuttal, and they did not permeate the trial. Additionally, while the court gave only a general jury instruction that arguments were not evidence, as opposed to a specific curative instruction targeting and striking the improper statements, defense counsel did not request any such curative instruction.
However, the context in which the statements were delivered points towards the likelihood of prejudice. As we have repeatedly recognized, “prejudicial statements made during closing argument militate in favor of reversal because they are the last words spoken to the jury by the trial attorneys.” United States v. Azubike, 504 F.3d 30, 39 (1st Cir.2007) (internal quotation marks and citation omitted).
Further, and in my view most significantly, the court must consider the *143 strength of the evidence against Liriano. As we have previously observed, “[t]he strength of the case against the defendant often is the most significant factor to be balanced against the prosecutorial misconduct.” Smith, 982 F.2d at 684-86 (finding that a new trial was not warranted after the prosecutor’s improper statements because the evidence against the defendant was uncontested); see also United States v. Gentles, 619 F.3d 75, 82 (1st Cir.2010) (finding no prejudice from improper remarks “because this is not a close case and there is no likelihood that the remarks could have affected its outcome” where there was an “abundance of independent evidence” (internal quotation marks and citation omitted)).
In this case, unlike Smith and Gentles, the evidence of Liriano’s guilt was neither uncontested nor abundant. Rather, “this was a close case and the prosecutor’s misstatements went to the heart of [the] defense.” Azubike, 504 F.3d at 40 (finding prosecutor’s statements prejudiced defendant where “there was no direct evidence that [the defendant] knew what was in the package, and the government was required to prove [the defendant’s] knowledge through inference”). In fact, the district court itself observed that Liriano’s was a “close case.” The strongest evidence that Liriano was conspiring to possess with intent to distribute a controlled substance included recorded conversations that implied Liriano was in communication with Robert’s handlers, as well as Liriano’s reaction to the word “candy.” I consider each in turn.
In a recorded conversation, Liriano told Robert that “[t]here are two people who called me at this number. I didn’t know. They never called me first.” In a second call, Liriano asked Robert, “[d]idn’t they give you my address?” The majority argues that “they” could have referred to Robert’s handlers, which could support an inference that Liriano was in communication with the conspirators. In addition, Robert spoke with his handlers to verify Liriano’s number and address, which the majority interprets as supporting an inference that the conspirators were familiar with Liriano. Such indirect and circumstantial evidence is hardly overwhelming. Cf. United States v. Doe, 860 F.2d 488, 495 (1st Cir.1988) (finding no prejudice after improper comments where “[t]he evidence against them on the possession charge was simply too overwhelming”).
The majority also credits Liriano’s presence at the meeting with Robert and his reaction to the word “candy” as evidence supporting a finding that Liriano possessed the requisite knowledge and intent. However, both facts are equally consistent with a finding that Liriano was hoping to acquire an illegal good other than a controlled substance, like the weapons and other contraband known to be smuggled via the reservation.
Given the weak circumstantial evidence that Liriano knew Robert was bringing him drugs as opposed to another form of contraband, the prosecutor’s argument that the agents knew from experience that “candy” was code in the drug trade was of critical importance and went directly to the heart of the defense. Thus, I am unable to conclude with a high degree of confidence that the prosecutorial misconduct at issue did not affect the outcome of the trial. Accordingly, I would find that the district court abused its discretion when it denied Liriano’s motion for a new trial.

. The majority suggests that we erroneously ignore the testimony of Agent Charles’s partner, who, the majority asserts, testified "at length about his own experience and his partnership with Charles." This assertion is misleading. First, Agent Charles’s partner neither introduced the term "candy” nor testified as to its meaning, so his discussion of his own experience does not help to shed light on the experience — or lack thereof — of Agent Charles. Second, although Agent Quackenbush arguably discussed his own experience "at length,” the same cannot be said of his testimony regarding his partnership with Agent Charles. The sum total of his testimony about their partnership consisted of Agent Quackenbush calling Agent Charles “my partner.” He discussed neither the length of their partnership nor any other information that could shed light on Agent Charles’s experience as an agent. Accordingly, the prosecutor's suggestion that Agent Charles’s understanding of drug code words could be trusted because he was a veteran agent who had conducted “countless numbers of drug investigations” was totally devoid of record support.

. In Liriano’s first trial, the court expressly excluded testimony that the reason Agent Charles suggested the term “candy” was because Robert had told him that was how Robert referred to the drugs.

. When reviewing the sufficiency of the evidence, the majority observes that terms "candy” was "suggested as a euphemism for or description of the BZP pills.” Certainly, the prosecutor "suggested” in closing argument that “candy” was "a code word” used in the drug trade, but it is of critical importance that no evidence was introduced on the subject. And although the majority hypothesizes that the jury might have determined that "candy” meant BZP pills because the pills physically resemble candies, not even the prosecutor suggested that the "candy” designation was suggested or used because of the physical appearance of the pills.